PEOPLE v RYAN

Docket No. 301787. Submitted January 4, 2012, at Lansing. Decided
    February 14, 2012, at 9:05 a.m. Leave to appeal denied, 493 Mich
    865.
    Sean Michael Ryan was convicted by a jury in the Saginaw Circuit
    Court of seven counts of first-degree criminal sexual conduct, MCL
    750.520b(1)(a) (CSC-1), for committing various acts of sexual
    penetration involving his daughter. The convictions were sup-
    ported by both the victim's testimony and defendant's confession.
    Defendant had moved to suppress his confession before trial,
    arguing that it was involuntary and that his waiver of his rights
    under *Miranda v Arizona*, 384 US 436 (1966), was not knowing,
    intelligent, and voluntary. The court, Janet M. Boes, J., denied the
    motion and following defendant's convictions sentenced him to 25
    to 50 years' imprisonment for each of the seven CSC-1 convictions.
    The sentences were to be served concurrently with the exception of
    those for two of the counts, which were to be served consecutively.
    Relying on MCL 750.520b(3), the court determined that it had
    discretion to make the two sentences consecutive because the
    distinct sexual penetrations associated with those counts arose out
    of the same transaction. Defendant appealed, arguing that the
    trial court erred by denying the motion to suppress his confession
    and imposing consecutive sentences for the two CSC-1 convictions.

    The Court of Appeals *held*:

    1. The voluntariness of a confession is assessed by considering
    the totality of the surrounding circumstances to determine
    whether the confession was freely and voluntarily made. A confes-
    sion is voluntary if it is the product of an essentially free and
    unconstrained choice by its maker and the accused's will has not
    been overborne or his or her capacity for self-determination
    criminally impaired. To determine whether a statement is volun-
    tary a court should consider various factors, including the age of
    the accused; his or her lack of education or intelligence level; his or
    her prior experience with the police or lack thereof; the repeated
    and prolonged nature of the questioning; the length of detention
    before the accused gave the statement in question; the lack of any
    advice to the accused of his or her constitutional rights; whether
    there was an unnecessary delay in bringing the accused in front of

a magistrate before he or she gave the confession; whether the accused was injured, intoxicated, drugged, or in poor health; whether the accused was deprived of food, sleep, or medical attention; whether the accused was physically abused; and whether he or she was threatened with abuse.

2. The same analysis applies to the voluntariness of a *Miranda* waiver. A defendant's waiver of his or her *Miranda* rights is voluntary if there is an absence of police coercion. A waiver of *Miranda* rights must be voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception.

3. The trial court properly held that defendant's confession was voluntary. Defendant's claim of involuntariness, which was predicated on pain, lack of medications and medical care, threats regarding his wife's parental rights, and alleged promises of leniency if he confessed, was supported solely by his own testimony and expressly contradicted by police testimony. The trial court's determination that the police officers were more credible was entitled to deference. Although defendant may have lacked access to pain medications and complained of pain earlier in the day to a polygraph examiner who declined to conduct a polygraph test, defendant had never indicated during the recorded interview that he was in pain or in need of medical attention. The confession was not the result of intimidation, coercion or deception, and it was freely and voluntarily made under the totality of the circumstances.

4. Concurrent sentencing is the norm in Michigan, and consecutive sentences may be imposed only if specifically authorized by statute. A court has discretion under MCL 750.520b(3) to impose a term of imprisonment for a first-degree criminal sexual conduct conviction that is to be served consecutively to any term of imprisonment imposed for any other criminal offense arising from the same transaction. Sentences are imposed separately for each count of a crime on which a defendant is convicted, including counts arising from the same transaction and regardless of whether the length of the sentences are identical. Thus, the language "any other criminal offense" in MCL 750.520b(3) means a different sentencing offense and can encompass additional violations of the same CSC-1 statute. The court did not err by imposing consecutive sentences for the two counts that involved two acts of sexual penetration that were part of the same transaction. They were distinct offenses involving different acts of penetration, and each could independently support a separate prison term. The two counts, which involved an act of vaginal

intercourse immediately followed by the act of fellatio, arose out of the same transaction because they grew out of a continuous time sequence, sprang one from the other, and had a connective relationship that was more than incidental.

5. The issues raised *in propria persona* by defendant are rejected because his arguments had no support whatsoever in the existing record, mischaracterized the record, were devoid of legal merit, failed to establish prejudice, or provided no rational basis for reversal.

Affirmed.

1. CRIMINAL LAW — CONFESSIONS — EVIDENCE — VOLUNTARINESS — TOTALITY OF THE CIRCUMSTANCES.

To determine whether a confession is voluntary, the court must consider the totality of the surrounding circumstances to determine whether it was freely and voluntarily made; a confession is voluntary if it is the product of an essentially free and unconstrained choice by its maker and the accused's will has not been overborne or his or her capacity for self-determination criminally impaired; a court should consider various factors, including the age of the accused; his or her lack of education or intelligence level; his or her prior experience with the police or lack thereof; the repeated and prolonged nature of the questioning; the length of detention before the accused gave the statement in question; the lack of any advice to the accused of his or her constitutional rights; whether there was an unnecessary delay in bringing the accused in front of a magistrate before he or she gave the confession; whether the accused was injured, intoxicated, drugged, or in poor health; whether the accused was deprived of food, sleep, or medical attention; whether the accused was physically abused; and whether he or she was threatened with abuse.

2. CRIMINAL LAW — INTERROGATIONS — *MIRANDA* RIGHTS — WAIVER — VOLUNTARINESS.

A defendant's waiver of his or her rights under *Miranda v Arizona*, 384 US 436 (1966), is voluntary if there is an absence of police coercion; the waiver of the *Miranda* rights must have been the product of a free and deliberate choice rather than intimidation, coercion, or deception.

3. SENTENCES — CONSECUTIVE SENTENCING — FIRST-DEGREE CRIMINAL SEXUAL CONDUCT.

A court may impose a term of imprisonment for a conviction of first-degree criminal sexual conduct (CSC-1) that is to be served

consecutively to any term of imprisonment imposed for any other criminal offense arising from the same transaction; the language "any other criminal offense" means a different offense and can encompass additional violations of the same CSC-1 statute (MCL 750.520b[3]).

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *Michael D. Thomas*, Prosecuting Attorney, and *Randy L. Price*, Assistant Prosecuting Attorney, for the people.

*Patrick K. Ehlmann* for defendant.

Before: MURPHY, C.J., and FITZGERALD and METER, JJ.

MURPHY, C.J. Defendant was charged with nine counts of first-degree criminal sexual conduct (CSC-1), MCL 750.520b(1)(a) (victim under age 13), arising out of various acts of sexual penetration involving his daughter. Following a jury trial, defendant was convicted of seven counts of CSC-1, with the jury acquitting defendant on the first count in the felony information and the trial court granting a directed verdict on the information's second count. The victim's testimony and defendant's confession fully supported the convictions. Defendant was sentenced to 25 to 50 years' imprisonment for each of the seven CSC-1 convictions. MCL 750.520b(2)(b) mandated a 25-year minimum sentence. The trial court ordered that the prison sentences be served concurrently, except for the sentence on count 9, which was to be served consecutively to the sentence on count 3. The trial court found that the sexual penetrations associated with counts 3 (fellatio) and 9 (vaginal intercourse) arose out of the same transaction and that imposition of consecutive sentences was thus permissible under MCL 750.520b(3). Defendant was therefore effectively sentenced to a minimum prison term of 50 years. On appeal, defendant

challenges the consecutive sentences imposed by the trial court, argues that the court erred by denying a motion to suppress his confession, and sets forth a litany of other arguments in support of reversal in a Standard 4 brief.[1] We conclude that the trial court correctly interpreted and applied MCL 750.520b(3) with respect to consecutive sentencing, that the court did not err by denying defendant's motion to suppress his confession, and that the remainder of defendant's appellate arguments lack merit. Accordingly, we affirm the convictions and sentences.

### I. FACTS

On March 1, 2010, the police were notified by local school personnel that a student had made allegations that her father, defendant, had sexually abused her on various occasions. The police met with defendant at the school, then transported him to the police department for questioning. Meanwhile, a detective took the victim to a local abuse and neglect center for purposes of a forensic interview. At the police department, defendant signed a form indicating that he understood and waived his *Miranda*[2] rights. He provided the police with the addresses of four properties that he owned, and defendant consented to a search of those locations.

In an initial police interview on March 1, defendant denied ever having sexual contact with his daughter. The interview was recorded, but a computer failure or human error resulted in the data or recording being

---

[1] Administrative Order No. 2004-6 adopted the minimum standards for indigent criminal appellate defense services proposed by the Appellate Defender Commission. A Standard 4 brief refers to a brief filed by the defendant *in propria persona* in which he or she raises issues on appeal against the advice of counsel.

[2] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

lost. Defendant was then transported to the county jail. The next day, March 2, detectives went to the county jail with the intention of interviewing defendant once again. However, the detectives decided not to interview defendant because he complained of a lack of sleep. Defendant was again interviewed by police on March 3, 2010, and the interview was recorded and played for the jury. During the interview, defendant confessed to engaging in numerous instances of sexual contact and penetration with his daughter, including vaginal and anal intercourse, as well as fellatio and cunnilingus.[3] The trial court denied defendant's pretrial motion to suppress the confession, which we shall address in more detail later.

The victim testified that she was 12 years old at the time of trial and that she had stopped living with her mother and went to live with her father in 2009 at a house in Saginaw that he shared with his wife (the victim's stepmother) and the victim's two half-brothers. The victim indicated that her stepmother went to Mississippi for a wedding sometime in June 2009, leaving defendant to care for her and her brothers. Shortly after her stepmother left, defendant called the victim into his bedroom and demanded that she remove all of her clothing. She testified that defendant put his penis in her vagina and thereafter placed his penis in her mouth, leading to ejaculation. The victim was 11 years old at the time. The act of vaginal intercourse and the act of fellatio in this first episode or transaction

---

[3] We note that on March 3, 2010, there were actually two interviews of defendant by police. A detective conducted an initial interview in which defendant allegedly confessed to sexually abusing his daughter; however, while this interview was successfully videotaped, the volume for the audio was turned down, so the recording was silent. The detective discovered the problem and then conducted a second interview, which was successfully recorded and played for the jury.

gave rise to counts 3 and 9 of the information charging CSC-1. Defendant's daughter testified that he continued to engage in various acts of sexual contact and penetration with her after the initial incident and that the sexual abuse occurred numerous times at the various properties owned by defendant.

The victim stated that on February 28, 2010, her stepmother and brothers were gone from the house and defendant wanted her to remove her clothing, but she refused and climbed under her bed. She testified that defendant took his belt off and started swinging it under the bed, striking her once on the leg. The next day at school the victim told the school counselor about the sexual abuse.

Defendant took the stand and denied any sexual contact with his daughter, suggesting that she had made it all up in an effort to return to her mother out of state. Defendant testified that his confession was false and resulted from being deprived of medical attention and his pain medications as well as threats that his sons would be taken away from his wife and put in foster care.

Defendant was convicted and sentenced on seven counts of CSC-1 as indicated. He appeals as of right.

## II. ANALYSIS

### A. MOTION TO SUPPRESS CONFESSION

Defendant first argues that the trial court erred by denying the motion to suppress his confession because the confession was involuntary and the waiver of his *Miranda* rights was not knowing, intelligent, and voluntary. Defendant claims that he had suffered a severe injury in the past and was disabled, necessitating an array of medications to manage his pain. Defendant

asserts that the police deprived him of his pain medications and proper medical care and also suggested that his wife could lose custody of their two sons because of the allegations. Defendant contends that he confessed because the police led him to believe that he would receive his pain medications and appropriate medical care and that his wife would be in a better position regarding the children if defendant gave a confession. Defendant notes that he was in extreme pain at the time of the confession.

The trial court conducted a *Walker*[4] hearing on defendant's motion to suppress, taking testimony from defendant and a number of police officers. The trial court found that defendant's testimony about pain or concern for his wife's parental rights was not credible. The court, having viewed a DVD of the confession, observed that defendant never complained of pain during the interview, that he entered the interview room, sat, and manipulated his bag of tobacco in an apparently pain-free manner, that his hands were not shaking as he drank from a cup, and that his speech was coherent. The court noted that defendant gave direct and specific answers to questions and provided details about interactions with his daughter, including information on times, places, and surrounding circumstances. The trial court also found that defendant's testimony concerning his mental state was contradicted by the officers' testimony about defendant's appearance and demeanor. The court found the officers' testimony to be credible.

We initially note that the nature and substance of defendant's argument is focused on the voluntariness of the confession and perhaps the voluntariness of the *Miranda* waiver, but not on whether the *Miranda*

---

[4] *People v Walker (On Rehearing)*, 374 Mich 331; 132 NW2d 87 (1965).

waiver was knowing and intelligent. Accordingly, our attention will be fixated on the question of voluntariness. "This Court reviews de novo the question of voluntariness." *People v Tierney*, 266 Mich App 687, 707; 703 NW2d 204 (2005). Deference is given, however, to the trial court's assessment of the credibility of the witnesses and the weight accorded to the evidence. *Id.* at 708. The trial court's factual findings are subject to reversal only if clearly erroneous, meaning that this Court is left with a firm and definite conviction that a mistake has been made. *Id.*

In *People v Cipriano*, 431 Mich 315, 333-334; 429 NW2d 781 (1988), our Supreme Court set forth the applicable analysis that governs a determination whether a confession was voluntary:

> The test of voluntariness should be whether, considering the totality of all the surrounding circumstances, the confession is "the product of an essentially free and unconstrained choice by its maker," or whether the accused's "will has been overborne and his capacity for self-determination critically impaired . . ." The line of demarcation "is that at which governing self-direction is lost and compulsion, of whatever nature or however infused, propels or helps to propel the confession."
>
> In determining whether a statement is voluntary, the trial court should consider, among other things, the following factors: the age of the accused; his lack of education or his intelligence level; the extent of his previous experience with the police; the repeated and prolonged nature of the questioning; the length of the detention of the accused before he gave the statement in question; the lack of any advice to the accused of his constitutional rights; whether there was an unnecessary delay in bringing him before a magistrate before he gave the confession; whether the accused was injured, intoxicated or drugged, or in ill health when he gave the statement; whether the accused was deprived of food, sleep, or medical attention; whether the

accused was physically abused; and whether the suspect was threatened with abuse.

The absence or presence of any one of these factors is not necessarily conclusive on the issue of voluntariness. The ultimate test of admissibility is whether the totality of the circumstances surrounding the making of the confession indicates that it was freely and voluntarily made. [Citations omitted.]

The legal analysis is essentially the same with respect to examining the "voluntary" prong of a *Miranda* waiver. In *People v Daoud*, 462 Mich 621, 635; 614 NW2d 152 (2000), the Supreme Court explained:

Determining whether a waiver of *Miranda* rights was voluntary involves the same inquiry as in the due process context. . . . [T]here is "no reason to require more in the way of a voluntariness inquiry in the *Miranda* waiver context than in the Fourteenth Amendment confession context." Thus, whether a waiver of *Miranda* rights is voluntary depends on the absence of police coercion. . . . " '[T]he relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception . . . .' " [Citations omitted.]

Defendant was interviewed on March 1 and 3, 2010, and the record reflects that the police declined to interview him on March 2 because he complained of a lack of sleep. Defendant indicated that the first interview lasted a couple of hours. He was advised of and waived his *Miranda* rights before the first interview. In regard to the interviews on March 3, 2010, defendant admitted that he received breaks in the interview process. Furthermore, on March 3, the interviewing detective obtained confirmation from defendant that he had previously been advised of and waived his *Miranda* rights. The detective also explained to defendant that his *Miranda* rights still applied, and defendant expressed, once again, that he understood

his *Miranda* rights before launching into his confession. Defendant's claim of involuntariness predicated on pain, lack of medications and medical care, and threats regarding his wife's parental rights was supported solely by his testimony. Police officers testified that they offered defendant food, drink, cigarettes, and regular bathroom breaks. Although defendant may have lacked access to pain medications for approximately two days and complained of pain earlier in the day to a polygraph examiner who declined to conduct a polygraph test, he never once indicated or suggested during the recorded interview that he was in pain or in need of medical attention. The trial court observed that defendant appeared pain-free and at ease during the interview.

Defendant's testimony concerning alleged promises of prosecutorial leniency, medical care, and continued parental rights with respect to defendant's wife if he confessed was flatly contradicted by police testimony. The trial court's assessment of the weight of the evidence and its determination that the officers were credible witnesses and that defendant lacked credibility fall within the trial court's purview and are entitled to deference, not second-guessing by us when we did not hear and observe the witnesses. We hold that defendant's confession was freely and voluntarily made under the totality of the circumstances; it was the product of an essentially free and unconstrained choice by defendant. Defendant's will was not overborne, nor was his capacity for self-determination critically impaired. The record reflects that the confession was not the result of intimidation, coercion, or deception. Reversal is unwarranted.

### B. CONSECUTIVE SENTENCING

Defendant argues that the trial court erred by imposing consecutive sentences on two of the CSC-1 convic-

tions under MCL 750.520b(3), which provides that a "court *may* order a term of imprisonment imposed under this section [the CSC-1 statute] to be served consecutively to any term of imprisonment imposed for *any other criminal offense arising from the same transaction.*"[5] (Emphasis added.) Defendant argues that the phrase "any other criminal offense" is ambiguous. He asserts that it could be interpreted as encompassing all criminal offenses other than the crime of CSC-1 or that it could be interpreted, consistently with the trial court's construction, as encompassing all criminal offenses except for the particular underlying count of CSC-1, thereby allowing consideration of separate and additional counts of CSC-1. Defendant points out that the same phrase or similar language has been used by the Legislature in various statutes in the Michigan Penal Code, e.g., MCL 750.110a(8) (home invasion)[6] and MCL 750.529a(3) (carjacking),[7] yet it is unlikely, defendant posits, that multiple convictions of any one of these offenses—for example, home invasion—could ever arise from the same transaction. Therefore, according to defendant, use of the phrase "any other criminal offense" or similar language necessarily reflects the Legislature's intent to encompass offenses other than the offense covered by the statute that provides for the consecutive sentencing. Accordingly, MCL 750.520b(3) was intended to allow for consecutive

---

[5] MCL 750.520b was amended in 2006, adding subsection (3). See 2006 PA 169.

[6] MCL 750.110a(8) provides that a "court may order a term of imprisonment imposed for home invasion in the first degree to be served consecutively to any term of imprisonment imposed for any other criminal offense arising from the same transaction."

[7] MCL 750.529a(3) provides that "[a] sentence imposed for a violation of this section may be imposed to run consecutively to any other sentence imposed for a conviction that arises out of the same transaction."

sentences only when the "other criminal offense" was not CSC-1 but was a different offense altogether. In further support of this proposition, defendant notes that the word "other," as commonly understood and defined, refers to something different or distinct in kind. Finally, defendant maintains that CSC-1 is already punishable by life or any term of years and that the fact of multiple sexual penetrations arising out of a sentencing offense is a factor that is taken into account by the sentencing guidelines under MCL 777.41— offense variable 11 (OV-11)—so that resort to consecutive sentencing is unnecessary to impose a lengthy prison term under circumstances involving multiple penetrations occurring within the same transaction.

This Court reviews de novo questions of statutory construction. *People v Flick*, 487 Mich 1, 8-9; 790 NW2d 295 (2010). This appeal requires us to construe MCL 750.520b(3). In *Flick*, 487 Mich at 10-11, the Michigan Supreme Court recited the well-established principles that govern our interpretation of a statute:

> The overriding goal of statutory interpretation is to ascertain and give effect to the Legislature's intent. The touchstone of legislative intent is the statute's language. The words of a statute provide the most reliable indicator of the Legislature's intent and should be interpreted on the basis of their ordinary meaning and the overall context in which they are used. An undefined statutory word or phrase must be accorded its plain and ordinary meaning, unless the undefined word or phrase is a "term of art" with a unique legal meaning. When we interpret the Michigan Penal Code, we do so according to the fair import of the terms, to promote justice and to effect the objects of the law. [Citations, alterations, and quotation marks omitted.]

When an undefined statutory term has been the subject of judicial interpretation, we presume that the Legislature used the particular term in a manner con-

sistent with the prior construction. *McCormick v Carrier*, 487 Mich 180, 192; 795 NW2d 517 (2010), quoting *People v Powell*, 280 Mich 699, 703; 274 NW 372 (1937). We must avoid an interpretation that renders any part of a statute surplusage or nugatory. *Zwiers v Growney*, 286 Mich App 38, 44; 778 NW2d 81 (2009). "A necessary corollary of these principles is that a court may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself." *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 63; 642 NW2d 663 (2002).

In Michigan, "concurrent sentencing is the norm," and a "consecutive sentence may be imposed only if specifically authorized by statute." *People v Brown*, 220 Mich App 680, 682; 560 NW2d 80 (1996). MCL 750.520b(3) certainly authorizes a court to impose a CSC-1 sentence that runs consecutively to a sentence imposed for another criminal offense arising from the same transaction, but the question is whether it does so in the context of two CSC-1 convictions.[8]

---

[8] As recognized by the trial court and the parties, MCL 750.520b(3) does not mandate consecutive sentencing. Rather, it provides that a court "may" impose consecutive sentences, making the decision discretionary. A sentencing court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). We ultimately hold in this case that consecutive sentences may be imposed relative to the two CSC-1 convictions at issue without offending MCL 750.520b(3), and we further hold that the trial court did not abuse its discretion by actually imposing consecutive sentences. The 50-year minimum term of imprisonment that results from the consecutive sentencing is proportionate to the offenses and the offender; the victim suffered horrific abuse at the hands of her father. *People v Milbourn*, 435 Mich 630, 650; 461 NW2d 1 (1990). We also note that "where a defendant receives consecutive sentences and neither sentence exceeds the maximum punishment allowed, the aggregate of the sentences will not be disproportionate under . . . *Milbourn*[.]" *People v Miles*, 454 Mich 90, 95; 559 NW2d 299 (1997), citing and finding persuasive *People v Warner*, 190 Mich App 734; 476 NW2d 660 (1991).

Initially, we address the issue of whether the CSC-1 convictions on counts 3 and 9 arose from the same transaction, as found by the trial court. The jury instructions and the jury verdict form itself expressly provided that count 3 pertained to an alleged act of fellatio that occurred during the first incident on Hancock Street in June 2009 and that count 9 concerned an alleged act of vaginal intercourse that also occurred during the first incident on Hancock Street in June 2009. The jury convicted defendant on both of these counts. The victim's testimony supported the verdicts and indicated that defendant, on an evening in June 2009, first engaged in vaginal intercourse with the victim and then proceeded to engage in fellatio with her before ejaculating.

The term "same transaction" is not statutorily defined; however, it has developed a unique legal meaning. Accordingly, it is appropriate to examine judicial interpretations of the terminology. *Flick*, 487 Mich at 11; *McCormick*, 487 Mich at 192; *Powell*, 280 Mich at 703. Two or more separate criminal offenses can occur within the "same transaction." *People v Nutt*, 469 Mich 565, 578 n 15; 677 NW2d 1 (2004) (" 'It is not of unfrequent occurrence, that the same individual, at the same time, and in the same transaction, commits two or more distinct crimes . . . .' ") (citation omitted). To find otherwise would be nonsensical, as consecutive sentencing provisions such as MCL 750.520b(3), MCL 750.110a(8), and MCL 750.529a(3) would be rendered meaningless. In the double-jeopardy context, our Supreme Court in *People v Sturgis*, 427 Mich 392, 401; 397 NW2 783 (1986), alluding to the same-transaction test, stated that the test in part required the joining of charges that "grew out of a continuous time sequence." Although *Nutt*, 469 Mich at 568, subsequently rejected the same-transaction test in favor of the same-elements

test for purposes of defining the term "same offense" in our Constitution as part of a double-jeopardy analysis, the *Sturgis* Court's definition that touched on the meaning of "same transaction" remains viable and useful in the context of simply defining the term "same offense."

Additionally, in *People v Johnson*, 474 Mich 96; 712 NW2d 703 (2006), the Court construed analogous statutory language that concerned acts "arising out of the sentencing offense," as that phrase is used in MCL 777.41(2)(a). MCL 777.41 governs the scoring of OV-11 under the legislative sentencing guidelines. The *Johnson* Court held:

> [W]e have previously defined "arising out of" to suggest a causal connection between two events of a sort that is more than incidental. We continue to believe that this sets forth the most reasonable definition of "arising out of." Something that "aris[es] out of," or springs from or results from something else, has a connective relationship, a cause and effect relationship, of more than an incidental sort with the event out of which it has arisen. [*Johnson*, 474 Mich at 101.]

The evidence in this case reflected that the sexual penetrations forming counts 3 and 9 grew out of a continuous time sequence in which the act of vaginal intercourse was immediately followed by the act of fellatio. These two particular sexual penetrations sprang one from the other and had a connective relationship that was more than incidental. Accordingly, counts 3 and 9 arose from the same transaction. We find further support for this conclusion in *People v Ochotski*, 115 Mich 601; 73 NW 889 (1898), in which there was evidence that the defendant had committed an unprovoked assault on a neighbor and, after disabling the neighbor, proceeded to assault the neighbor's wife, who had arrived on the scene. The defendant was acquitted

by a jury of assaulting his neighbor, but was later tried and convicted of assaulting the neighbor's wife. The Court, rejecting a double-jeopardy argument, noted that "[t]here is a difference between one volition and one transaction." *Id.* at 610. The Court stated that the victims were struck and injured by different blows, that "in one transaction a man may commit distinct offenses," and that the assaults were part of "the same transaction." *Id.* Similarly, in the case at bar, while the two volitional acts of sexual penetration constituted distinct offenses, they were part of the same transaction. As in *Ochotski*, there was no relevant disruption in time or in the flow of events between the two distinct offenses.

Next, we examine the phrase "any other criminal offense," as used in MCL 750.520b(3). Again, MCL 750.520b(3) provides that a "court may order a term of imprisonment imposed under this section [for CSC-1] to be served consecutively to any term of imprisonment imposed for any other criminal offense arising from the same transaction." Defendant maintains that the "other" criminal offense cannot be the crime of CSC-1 in general, i.e., any and all other CSC-1 offenses are barred from consideration, regardless of the fact that a second CSC-1 offense constitutes a separate and distinct count. Therefore, according to defendant, a CSC-1 sentence can only be imposed consecutively to a non-CSC-1 sentence if the associated offenses arose out of the same transaction. We disagree, as this interpretation is inconsistent with the plain and unambiguous language of the statute. The phrase "any other criminal offense" necessarily invites a comparison between two criminal offenses, which, given the use of the word "other," must be different offenses, not the same one. The key to the proper interpretation of the statute, as we view it, is determining how broadly or narrowly to

construe the term "criminal offense." Reference to a "criminal offense" could pertain solely to a *type* of crime as identified by its label or moniker, e.g., CSC-1, armed robbery, and home invasion, or it could relate to a particular count of any given type of crime. Thus, we must discern whether the Legislature, in using the phrase "any other criminal offense," intended for sentencing courts to focus on and make distinctions between types of crimes—CSC-1 and non-CSC-1 crimes—or between individual counts.

The language and sentence structure of MCL 750.520b(3) dictate that criminal offenses, when being examined to determine whether they are the same or different for purposes of consecutive sentencing, be viewed in relationship to the "term[s] of imprisonment imposed" thereon or, in other words, in relationship to their sentences. The distinction between "a term of imprisonment imposed under [MCL 750.520b]" and the "term of imprisonment imposed for any other criminal offense" necessarily embodies or includes a distinction predicated on the *sentences* imposed. Therefore, the phrase "any other criminal offense" means a different sentencing offense, and offenses, for purposes of sentencing, are always reduced or broken down into individual counts. Sentences or terms of imprisonment are imposed for each count of a crime on which a defendant is convicted, including counts arising from the same transaction. Each count in an information constitutes a separate crime. *People v Taurianen,* 102 Mich App 17, 30; 300 NW2d 720 (1980); see also *People v Vaughn,* 409 Mich 463, 465; 295 NW2d 354 (1980) (" 'Each count in an indictment is regarded as if it was a separate indictment.' ") (citation omitted). A crime such as CSC-1 can be committed in myriad ways and give rise to multiple counts arising from the same transaction, leading to sentences on each count. While sentences on multiple

counts of any crime may be imposed to run concurrently, and although the length of those sentences may be identical, they are still separately imposed sentences for each and every count.

A fair import of the language in MCL 750.520b(3) is that the trial court had the discretion to impose a term of imprisonment for defendant's act of engaging in vaginal intercourse with the victim—CSC-1, count 9—to be served consecutively to the term of imprisonment imposed for defendant's act of engaging in fellatio with the victim—CSC-1, count 3—as count 3 was a different or distinct criminal offense, given that it was not the same act as the act of vaginal intercourse that formed the basis of count 9. While the two counts are both CSC-1 offenses, they are distinct in the sense that they pertained to different acts of sexual penetration and could independently support imposition of a term of imprisonment; they stand on their own as criminal offenses. Count 3 constitutes "any other criminal offense" when viewed in relationship to, or in conjunction with, count 9. The Legislature's use of the word "any" is all-encompassing and does not permit us to exclude from consideration other CSC-1 offenses upon which a term of imprisonment was imposed.[9]

We find support for our holding in *People v Morris*, 450 Mich 316; 537 NW2d 842 (1995). The Court in *Morris* interpreted the consecutive sentencing provision in MCL 333.7401(3), which provides that "[a] term of imprisonment imposed under subsection (2)(a) [a controlled-substance crime] may be imposed to run

---

[9] Although the Legislature may have generally contemplated imposition of a consecutive sentence under MCL 750.520b(3), if a CSC-1 and a non-CSC-1 offense were committed during the same transaction, the statute as written does not so limit its scope. We must construe the statute as written.

consecutively with any term of imprisonment imposed for the commission of *another felony*." (Emphasis added.) In *Morris*, our Supreme Court construed an earlier version of this statutory provision that had comparable language, except that consecutive sentencing was mandatory. *Morris*, 450 Mich at 319-320. The Court held:

> In light of the absence of words of limitation in the statute, and because of the lack of evidence that there was a legislative intent to limit the scope of the term "another felony" in § 7401(3), we hold that the term includes any felony for which the defendant has been sentenced either before or simultaneously with the controlled substance felony enumerated in § 7401(3) for which a defendant is currently being sentenced. This represents the most sensible and reasonable interpretation of "another felony" in light of the intent of the law to deter the commission of controlled substance offenses through the imposition of consecutive sentences. The phrase applies to felonies that violate any provision of the controlled substances act, *including additional violations of the same controlled substance provision as that for which the defendant is being sentenced or any other felony*. Sentences imposed in the same sentencing proceeding are assumed, for the purposes of § 7401(3), to be imposed simultaneously. Where any of the felonies for which a defendant is being sentenced in the same proceeding are covered by the mandatory consecutive sentencing provision of § 7401(3), the sentence for that felony must be imposed to run consecutively to the term of imprisonment imposed for other, nonenumerated felonies. [*Id.* at 337 (emphasis added).]

For purposes of our particular issue and analysis, we view no discernible difference between the phrases "another felony" and "any other criminal offense," other than the "felony" aspect of the former phrase. Consistently with *Morris*, the phrase "any other criminal offense" can encompass additional violations of the same CSC-1 statute. Again, the *Morris* Court emphasized that

[a]bsent a convincing indication that the Legislature meant the term ["another felony"] to be interpreted in a limited manner, . . . a broad definition of "another felony" provides the most sensible and reasonable interpretation of the legislative expression embodied in the statute, in view of the subject matter of the law and the goal of consecutive sentencing. [*Id.* at 327-328.]

We find that this logic applies equally to MCL 750.520b(3).

The purpose of consecutive-sentencing statutes is to deter persons from committing multiple crimes by removing the security of concurrent sentencing. *People v Phillips*, 217 Mich App 489, 499; 552 NW2d 487 (1996); see also *People v Denio*, 454 Mich 691, 703; 564 NW2d 13 (1997) (noting that consecutive sentences enhance punishment for the purpose of deterring certain criminal behavior). We find it undeniable that the Legislature, by adding MCL 750.520b(3), intended to empower sentencing courts by authorizing the imposition of lengthy prison terms by way of consecutive sentencing when a defendant committed a non-CSC-1 criminal offense and chose to additionally commit a CSC-1 offense during the same transaction. The Legislature intended to remove the security of concurrent sentencing and provide for real and substantial consequences as part of an effort to deter the commission of CSC-1 in transactions involving the commission of non-CSC-1 offenses. We see no reason for concluding that the Legislature did not intend to extend this goal to cases in which multiple CSC-1 offenses are committed during the same transaction. For example, if a defendant sexually victimized two persons in the same transaction, the defendant would likely face a sentence comparable to a sentence for sexually assaulting only one victim absent the prospect of consecutive sentences. Even when there is only one victim, a multiplicity of

sexual penetrations in a single transaction would typically heighten the level of egregiousness associated with the defendant's conduct, but the additional conduct or penetrations would effectively be protected by the security of concurrent sentencing if consecutive sentencing were prohibited. While it may be argued that a defendant who commits a great number of CSC-1 offenses against a single victim all in separate transactions over time is more deserving of consecutive sentencing than, for example, a defendant who commits two or more penetrations against a victim in the same transaction, MCL 750.520b(3) provides a sentencing court with the discretion to not employ consecutive sentencing if not appropriate under the circumstances. Moreover, it is not for us to determine who is more deserving of a consecutive sentence relative to the enactment of sentencing statutes and general policy; that is the Legislature's arena.

Because we have concluded that the plain and unambiguous language of the statute supported the imposition of consecutive sentences, it is unnecessary to address the various arguments posed by defendant that entail looking outside of the statutory language itself on the basis of defendant's mistaken proposition that the statute is ambiguous. We hold that the trial court correctly interpreted and applied MCL 750.520b(3) and did not abuse its discretion when it imposed consecutive sentences.

### C. STANDARD 4 BRIEF

Defendant submitted a brief pursuant to Administrative Order No. 2004-6, Standard 4, in which he presents myriad issues, arguing that the prosecutor engaged in misconduct, that the trial court erred by failing to provide substitute counsel, that his arrest was unlaw-

ful, that the court made numerous evidentiary errors, and that counsel was ineffective in several instances. We have carefully scrutinized defendant's arguments and thoroughly reviewed the record. We find it unnecessary to address defendant's arguments in any detail because the arguments have no support whatsoever in the existing record, grossly and nonsensically mischaracterize the record, are wholly devoid of legal merit, fail to establish the existence of prejudice, or otherwise provide no rational basis for reversal.

### III. CONCLUSION

We hold that the trial court did not err by denying defendant's motion to suppress his confession. We additionally conclude that the trial court had the authority under MCL 750.520b(3) to impose consecutive sentences with respect to the CSC-1 convictions on counts 3 and 9 and that the court did not abuse its discretion by imposing the consecutive sentences. Finally, we hold that the arguments in defendant's Standard 4 brief do not warrant reversal.

Affirmed.

FITZGERALD and METER, JJ., concurred with MURPHY, C.J.