# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

HEATHER RENEE COLLINS,

        Defendant-Appellant.

UNPUBLISHED
December 20, 2016

No. 328853
Berrien Circuit Court
LC No. 2014-016261-FH;
        2014-016381-FH

Before: BORRELLO, P.J., and SAWYER and MARKEY, JJ.

PER CURIAM.

Defendant, Heather Renee Collins, was convicted by a jury of absconding on or forfeiting a bond, MCL 750.199a; escape from lawful custody, MCL 750.197a; and failure to register as a sex offender in accord with the Sex Offenders Registration Act (SORA), MCL 28.721 *et seq*, second offense, MCL 28.725(1); MCL 28.729(1)(b). Defendant was sentenced as a fourth-offense habitual offender, MCL 769.12, to 2 to 15 years' imprisonment with credit for 227 days served for her absconding on or forfeiting a bond conviction, 227 days in jail with credit for 227 days served for her escape from lawful custody conviction, and 2 to 7 years' imprisonment with credit for 241 days served for her failure to register as a sex offender conviction. The trial court ordered defendant to serve the sentences for absconding on or forfeiting a bond and failure to register as a sex offender concurrently with each other, but consecutively to defendant's prior possession of methamphetamine conviction for which she was on bond when she committed the offenses in the instant case. Defendant now appeals by right. We affirm.

Defendant first argues that the evidence was insufficient to support her conviction for failure to register as a sex offender. This Court "review[s] de novo a challenge to the sufficiency of the evidence." *People v Henry (After Remand)*, 305 Mich App 127, 142; 854 NW2d 114 (2014). "[W]hen determining whether sufficient evidence has been presented to sustain a conviction, a court must view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992).

MCL 28.725 provides in relevant part:

(1) An individual required to be registered under this act who is a resident of this state shall report in person and notify the registering authority having jurisdiction

-1-

where his or her residence or domicile is located immediately after any of the following occur:

(a) The individual changes or vacates his or her residence or domicile.

* * *

(e) The individual intends to temporarily reside at any place other than his or her residence for more than 7 days.

MCL 28.729(1)(b) states:

(1) Except as provided in subsections (2), (3), and (4), an individual required to be registered under this act who willfully violates this act is guilty of a felony punishable as follows:

* * *

(b) If the individual has 1 prior conviction for a violation of this act, by imprisonment for not more than 7 years or a fine of not more than $5,000.00, or both.

The term "immediately" is defined as "within 3 business days." MCL 28.722(g).

This Court has previously noted that determining what "willfully" means " 'is an extremely murky area.' " *People v Lockett (On Rehearing)*, 253 Mich App 651, 654; 659 NW2d 681 (2002) (citation omitted). In the SORA context, the *Lockett* Court found "no error in the district court's conclusion that 'wilfully' requires something less than specific intent, but requires a knowing exercise of choice." *Id*. at 655. "[B]ecause it can be difficult to prove a defendant's state of mind on issues such as knowledge and intent, minimal circumstantial evidence will suffice to establish the defendant's state of mind, which can be inferred from all the evidence presented." *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008).

In *Lockett*, the defendant was required to comply with SORA and notify local law enforcement if he changed his address. *Lockett*, 253 Mich App at 652. The evidence at the preliminary examination demonstrated that the defendant notified his probation officer of his address change, but not the local police; that notifying a probation officer did not satisfy the requirement of notifying a "local law enforcement agency" under SORA; that defendant signed his original SORA address registration; that defendant's initial probation officer had a caseload consisting only of sex offenders; and that defendant's initial probation officer gave each of his probationers a standard speech explaining that they must update their address every time they moved and that the notification must be made at the police station rather than the probation office. *Id*. at 655-656. The *Lockett* Court found that this evidence was "sufficient to establish probable cause to believe that defendant knew he was required to update his address with the police department whenever he moved and that he purposely failed to do so." *Id*. at 656. The Court concluded that the district court was incorrect to find that there was no evidence to support a finding that the defendant acted willfully, and the case was remanded for the defendant to be bound over for trial. *Id*. at 652, 656.

Here, there is no dispute that defendant was required to be registered under SORA and report any change in her residence or intent to temporarily reside at a place other than her residence for more than seven days as mandated by MCL 28.725(1)(a), (e). It is also undisputed that defendant did not report a change in residence or intent to reside someplace other than her residence temporarily. Instead, defendant argues that the evidence was insufficient to establish that she actually changed her residence or intended to reside away from her Runyon Road residence for more than seven days, and she also argues that any failure to report was not willful. We disagree.

First, the evidence was sufficient to demonstrate that defendant either changed her residence or intended to temporarily reside at a place other than her residence for more than seven days. Deputy Vincent Keiser saw defendant on September 25, 2014, at the Benton Harbor Wings Etc. with Dub Collins, defendant's husband, in violation of her tether bond conditions. Deputy Keiser confronted defendant. After this incident, defendant was instructed to turn herself in. She did not, and instead, she went to Wal-Mart and admitted to refraining from going home until later that evening so she could avoid the police. Deputy James Laughlin went to defendant's residence on September 26, but he did not see her there. He was also told by a man at the residence that defendant was not there. Deputy James Hagenbarth testified that his drive-by unit did not pick up any signal from defendant's tether transmitter when he drove within the unit's range of defendant's residence on September 26 and September 30. Deputy Hagenbarth was also unable to reach defendant by telephone. Jonathan Smith, the bail agent who had posted defendant's bond, testified that he spoke to Dub on September 26: Dub indicated that he and defendant had left Michigan and were in Indiana. Smith and his partner conducted surveillance at defendant's residence for at least 12 hours a day over the course of four days and never saw defendant. On October 13, Trooper Jeff Miazga went to defendant's residence. Nobody answered the door, and he did not see defendant in the area or through the windows. Smith eventually apprehended defendant and Dub in Arkansas on October 14, 2014. Smith testified that defendant indicated during the car trip back to Michigan that she and Dub had arrived in Arkansas either "late Friday or Saturday morning," September 27 or 28. Finally, at her arraignment for the charges stemming from this series of events, defendant admitted that she lived at her Runyon Road address until right before she "absconded" and that she absconded and left her tether "on September 25th."

Viewing this evidence in a light most favorable to the prosecution, a reasonable jury could conclude that defendant had left the residence by September 26 and was gone from it until she was apprehended in Arkansas on October 14. Moreover, such a lengthy absence could be seen as a change in address or as demonstrating an intent to reside someplace other than her residence for more than seven days. This is more than "minimal circumstantial evidence" of defendant's intent to change her residence or at least temporarily reside someplace other than her residence for more than seven days because the evidence supports the conclusion that she was in fact absent from her residence for more than seven days. See *Kanaan*, 278 Mich App at 622.

Second, the evidence was sufficient to demonstrate that defendant's failure to report her address was willful. Defendant testified that she knew that she was required under SORA to report to local law enforcement if she changed her residence or intended to reside at a different place for seven days. However, defendant knew that she had been caught by Deputy Keiser at Wings Etc. violating several conditions of her bond, including being in a bar, being with Dub,

and being someplace other than her scheduled location while on tether. She admitted to delaying her return home after the incident at Wings Etc. because she knew the police would be there to pick up the tether equipment. She also admitted to missing court dates because she did not want to be arrested for violating the conditions of her bond. Defendant knew the police were looking for her. She would have risked being arrested immediately if she had reported in person to local law enforcement to give notice of a permanent or temporary change of residence as required by MCL 28.725(1). Furthermore, Dub testified that defendant drove her silver Dodge Stratus to Arkansas and parked it inside the privacy fence at the house where they were staying in Arkansas; Smith testified that he noticed a gray and green Dodge sedan parked behind a privacy fence on the property where he apprehended defendant and Dub.

In other words, defendant knew what actions were required of her under SORA; she knew the consequences that she faced for violating the conditions of her bond, and she failed to fulfill her SORA reporting requirements. It also appears that she was attempting to hide both her car and her whereabouts while in Arkansas. Thus, it is reasonable to conclude that defendant's failure to register was a "knowing exercise of choice" and that she purposefully disregarded her reporting requirements in an attempt to avoid arrest. See *Lockett*, 253 Mich App at 655. Considering this evidence in the light most favorable to the prosecution, a rational jury could have found that defendant willfully failed to report her new permanent or temporary residence because she was attempting to avoid arrest. See *Wolfe*, 440 Mich at 515; *Lockett*, 253 Mich App at 655.

Nevertheless, defendant argues that the evidence established that she did not leave Michigan until October 12 and that she did so without the intention of being away from her residence for more than seven days. Defendant testified that she did not move out of her Runyon Road residence, that she went to Arkansas on October 12 to visit family, intended to come back to Michigan, and did not plan to be away from her residence for more than seven days. There was further testimony from Dub, Bessie Ward, and Roger Ward supporting defendant's version of events. On appeal, defendant claims that Smith's testimony that she admitted to leaving Michigan on September 27 or 28 is the only evidence that defendant left Michigan earlier than October 12. As already discussed, there was substantial evidence in addition to this particular statement that defendant left Michigan during late September. Essentially, defendant asks this Court to believe the version of events she and the other defense witnesses gave over the testimony of the prosecution's witnesses. But "[i]t is the jury's task to weigh the evidence and decide which testimony to believe." *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008) (quotation marks and citation omitted). Moreover, "[a]ll conflicts in the evidence are resolved in favor of the prosecution," and "[t]his Court will not interfere with the trier of fact's determinations regarding the weight of the evidence or the credibility of witnesses. *People v Stevens*, 306 Mich App 620, 628; 858 NW2d 98 (2014).

Considering all of the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that the prosecution proved the essential elements of failure to register as a sex offender beyond a reasonable doubt. Therefore, the evidence is sufficient to support defendant's conviction. See *Wolfe*, 440 Mich at 515.

Next, defendant argues that her sentence was based on inaccurate information because her conviction for failing to register as a sex offender is not supported by sufficient evidence; consequently, it should not have been considered as part of defendant's sentencing.

"A defendant is entitled to be sentenced by a trial court on the basis of accurate information." *People v Francisco*, 474 Mich 82, 88; 711 NW2d 44 (2006). "If the trial court's sentence is within the appropriate guidelines range, the Court of Appeals must affirm the sentence unless the trial court erred in scoring the guidelines or relied on inaccurate information in determining the defendant's sentence." *People v Babcock*, 469 Mich 247, 261; 666 NW2d 231 (2003), citing MCL 769.34(10).[1] "*Lockridge*[2] did not alter or diminish MCL 769.34(10)[.]" *People v Schrauben*, 314 Mich App 181, 196 n 1; 886 NW2d 173 (2016).

Here, defendant's argument depends completely on the assumption that she was improperly convicted of failure to register as a sex offender. But as discussed above, the evidence was sufficient to support this conviction. Thus, including this conviction as part of determining defendant's sentence could not constitute "inaccurate information." Defendant does not argue that her sentence is outside the guidelines' range as calculated with the inclusion of her failure to register as a sex offender conviction. And because sufficient evidence supported this conviction, its inclusion does not provide a basis for arguing that defendant's guidelines range was not the "appropriate" one. Therefore, defendant's sentence must be affirmed because defendant has not shown that "the trial court erred in scoring the guidelines or relied on inaccurate information in determining the defendant's sentence." *Babcock*, 469 Mich at 261; see also MCL 769.34(10).

Finally, defendant argues that the trial court abused its discretion by making her sentences in the instant case consecutive to her sentence for possession of methamphetamine. The methamphetamine case was one of defendant's cases that was pending and for which she was on bond when she committed the instant offenses.

Defendant preserved this issue by objecting at sentencing to the imposition of consecutive sentences. *People v McLaughlin*, 258 Mich App 635, 670; 672 NW2d 870 (2003). Where a consecutive sentencing statute "provides that a court 'may' impose consecutive sentences," the determination of whether sentences are to be consecutive is discretionary, not mandatory. An appellate court will then review the lower court's decision for an abuse of discretion, which occurs when the court's "decision falls outside the range of reasonable and principled outcomes." *People v Ryan*, 295 Mich App 388, 401 n 8, 409; 819 NW2d 55 (2012).

---

[1] MCL 769.34(10) provides in relevant part:

> If a minimum sentence is *within the appropriate guidelines sentence range*, the court of appeals *shall affirm that sentence and shall not remand for resentencing* absent an error in scoring the sentencing guidelines or inaccurate information relied upon in determining the defendant's sentence. [Emphasis added.]

[2] *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015).

"It is well settled in Michigan that in the absence of statutory authority the imposition of consecutive sentences is forbidden." *People v Chambers*, 430 Mich 217, 222; 421 NW2d 903 (1988). MCL 768.7b(2) provides:

> (2) Beginning January 1, 1992, if a person who has been charged with a felony, pending the disposition of the charge, commits a subsequent offense that is a felony, upon conviction of the subsequent offense or acceptance of a plea of guilty, guilty but mentally ill, or nolo contendere to the subsequent offense, the following shall apply:
>
> (a) Unless the subsequent offense is a major controlled substance offense, the sentences imposed for the prior charged offense and the subsequent offense *may run consecutively*.
>
> (b) If the subsequent offense is a major controlled substance offense, the sentences imposed for the prior charged offense and the subsequent offense shall run consecutively. [Emphasis added.]

In *Chambers*, the Michigan Supreme Court noted that "[a]s originally enacted by 1971 P.A. 180, the consecutive sentencing statute [MCL 768.7b] extended discretionary consecutive sentencing authority in the instance *where a defendant committed a felony while free on bond pending final disposition of a prior felony charge*." *Chambers*, 430 Mich at 225 (emphasis added).[3] Under MCL 768.7b, a charge remains "pending" until the defendant is sentenced on the conviction arising out of the first offense and until the original charge with respect to the first offense is dismissed. *People* v *Smith*, 423 Mich 427, 452; 378 NW2d 384 (1985). The Court also explained that the purpose of the statute "is to deter those charged with one felony from committing another prior to final disposition of the first." *Id*. at 450. The statute precludes the assurance "of 'one free crime' because of the usual policy of concurrent sentencing." *Id*. at 450.

Here, Trooper Evan Hauger testified that as of September 25, 2014, defendant was on bond in four different case files that were pending and awaiting trial in Berrien County. Those pending cases included case number 2014-015133, in which defendant was originally charged with possession of methamphetamine, along with other drug-related offenses. She pleaded guilty to the possession of methamphetamine charge on June 1, 2015. Possession of methamphetamine is a felony. MCL 333.7403(2)(b)(i). Defendant was sentenced for this conviction on July 17, 2015, before being sentenced in the instant case on the same day. Thus, defendant had been

---

[3] The *Chambers* Court quoted the original version of MCL 768.7b, which is substantially similar to the current version of the statute:

> "When a person, who has been charged with a felony and pending the disposition of the charge, commits a subsequent offense which is a felony, upon conviction or acceptance of a guilty plea of the subsequent offense, the sentences imposed for conviction of the prior charged offense and any subsequent offense, may run consecutively." [*Chambers*, 430 Mich at 225, quoting 1971 P.A. 180.]

charged with a felony and the disposition of that charge was pending when she left her tether and went to Arkansas at some point around September 26, 2014. *Smith*, 423 Mich at 452.

As a result of defendant's trip to Arkansas in the fall of 2014, she was convicted of absconding on or forfeiting a bond, escape from lawful custody, and failure to register as a sex offender, both of which are felonies. MCL 750.199a; MCL 28.729(1). Consequently, defendant committed a subsequent felony while her previous felony was still pending. MCL 768.7b(2). Neither of her subsequent felonies were controlled substance offenses. Thus, upon her conviction for the subsequent felonies, it was within the trial court's discretion to order that defendant serve the sentences for her prior and subsequent felonies consecutively. MCL 768.7b(2)(a); *Chambers*, 430 Mich at 225. The trial court also recognized that defendant's subsequent absconding on bond and failure to register as a sex offender convictions would essentially go unpunished if it did not order these sentences to be served consecutively to defendant's possession of methamphetamine conviction. The court noted that it would be an "unjust result" for defendant to avoid punishment for her subsequent felonies and that "[b]eing out on bond is not a license to commit new and additional crimes." The trial court's rationale is in accord with the intended purpose of MCL 768.7b to "deter those charged with one felony from committing another prior to final disposition of the first" and to prevent defendants from escaping punishment for subsequent crimes. *Smith*, 423 Mich at 450.

MCL 768.7b clearly permits a sentencing court to order a defendant to serve a sentence for a subsequent felony consecutively to an originally charged felony when, as in this case, the subsequent felony is committed while the defendant is out on bond for the original felony. *Chambers*, 430 Mich at 225. Therefore, the trial court did not abuse its discretion by imposing consecutive sentences in this case. *Ryan*, 295 Mich App at 401 n 8.

We affirm.

/s/ Stephen L. Borrello
/s/ David H. Sawyer
/s/ Jane E. Markey