*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ROBERT MICHAEL HERNANDEZ,

        Defendant-Appellant.

UNPUBLISHED
November 16, 2023

No. 363939
Manistee Circuit Court
LC Nos. 21-005219-FC;
        22-005238-FC;
        22-005239-FC

Before: HOOD, P.J., and JANSEN and FEENEY, JJ.

PER CURIAM.

Defendant entered a no-contest plea to possession of burglar's tools, MCL 750.116, entering without breaking with intent to commit a felony or larceny, MCL 750.111, larceny of $200 or more but less than $1,000, second or subsequent offense, MCL 750.356(4)(a), MCL 750.356(3)(b), and malicious destruction of a building valued at $1,000 or more but less than $20,000, MCL 750.380(3)(a). The trial court sentenced defendant as a third-offense habitual offender, MCL 769.11, to serve 43 months to 20 years' imprisonment for possession of burglar's tools, 43 months to 10 years' imprisonment for entering without breaking, 23 months to 5 years' imprisonment for larceny, and 29 months to 5 years' imprisonment for malicious destruction of a building. The sentences for larceny and malicious destruction of a building were ordered to run concurrently with each other but consecutive to the concurrent sentences imposed for possession of burglar's tools and entering without breaking. Defendant appeals his sentences by leave granted.[1] We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

On October 9, 2021, police officers were dispatched to a rehabilitation facility regarding a call about a "suspicious" man, later identified as defendant, who was walking around the side of the building with a wagon and appeared to be attempting to get inside. When the officers arrived,

---

[1] *People v Hernandez*, unpublished order of the Court of Appeals, entered December 22, 2022 (Docket No. 363939).

they saw a separate utility building with the window open; a grinding noise was emanating from inside. Defendant was observed setting a duffle bag on a windowsill and climbing out the window, and he was taken into custody. Officers found a copper pipe approximately seven feet long next to the wagon. Inside the rehabilitation facility, the officers discovered that numerous pipes and meters had been cut off and removed. The duffle bag contained a portable grinding tool, numerous replacement grinding wheels, some channel lock pliers, and a bag containing miscellaneous metal and copper nuts, bolts, and gauges, along with receipts from a recycling center bearing defendant's name.

Defendant was charged in Manistee Circuit Court file number 21-005219-FC with breaking and entering a building with the intent to commit larceny therein, entering without breaking, larceny in a building, possession of burglar's tools, and malicious destruction of a building. Defendant was granted pretrial release under a cash bond.

While defendant was out on bond, the police department was notified of additional thefts that occurred throughout the city. On January 14, 2022, the Manistee Department of Public Works reported a stolen manhole cover, which was later found in defendant's possession. On January 20, 2022, the police department received information that defendant had been seen entering an apartment complex carrying a bag of what appeared to be pieces of pipe. When the officers spoke with defendant, he reported that he was unloading groceries, and that he used a homemade cart to transport the groceries. The officers searched the apartment and found numerous items of brass and copper. The officers noticed some of the items had been cut, were wet, or had ice inside them.

On the same day, the executive director of the rehabilitation facility reported that someone had recently broken into the facility again in the same area that defendant had previously broken into. Officers saw damage and items that had been cut from an exterior generator behind the maintenance building. One of the officers followed tracks to the fence line and located two yellow hacksaws near the fence. The officer also saw tracks in the snow consistent with the cart that belonged to defendant. The officer continued to walk the fence line and located one shoe in the snow, which matched a shoe found earlier in the apartment where defendant was located.

Defendant was charged in file number 22-005238-FC with larceny of $200 to $1,000, second or subsequent offense, as a fourth-offense habitual offender, for stealing the manhole cover. Defendant was charged in file number 22-005239-FC with breaking and entering with the intent to commit larceny therein, larceny in a building, receiving and concealing stolen property, and malicious destruction of a building with a value of $1,000 to $20,000, as a fourth-offense habitual offender, for breaking into the rehabilitation facility and removing copper and brass pipes.

The parties entered into a "global plea agreement" for the three files. In exchange for defendant's no-contest plea to the charges of possession of burglar's tools, entering without breaking, larceny of $200 to $1,000, second or subsequent offense, and malicious destruction of a building with a value of $1,000 to $20,000, the remaining charges in the three files were dismissed. The fourth-offense habitual offender notices were also dismissed, and defendant agreed to a third-offense habitual offender enhancement in file number 21-005219-FC. Additionally, the prosecutor agreed to dismiss another file in which defendant was charged with second-degree retail fraud.

At sentencing, the trial court discussed the totality of defendant's convictions and the charges that were dismissed in exchange for defendant's no-contest pleas. The trial court noted that defendant's addiction to methamphetamine did not justify his criminal conduct, and the court concluded that consecutive sentencing was proportionate to defendant and the crimes he committed.

## II. CONSECUTIVE SENTENCING

Defendant argues that the trial court failed to adequately explain its reasons for imposing consecutive sentences. We disagree.

"When a statute grants a trial court discretion to impose a consecutive sentence, that decision is reviewed for an abuse of discretion." *People v Baskerville*, 333 Mich App 276, 290; 963 NW2d 620 (2020). A trial court abuses its discretion by making a decision that is outside the range of reasonable and principled outcomes. *Id*.

"In Michigan, concurrent sentencing is the norm, and a consecutive sentence may be imposed only if specifically authorized by statute." *People v Ryan*, 295 Mich App 388, 401; 819 NW2d 55 (2012) (quotation marks and citation omitted). In this case, consecutive sentencing was authorized by MCL 768.7b(2)(a), which provides, in relevant part:

> [I]f a person who has been charged with a felony, pending the disposition of the charge, commits a subsequent offense that is a felony, upon conviction of the subsequent offense or acceptance of a plea of guilty, guilty but mentally ill, or nolo contendere to the subsequent offense, the following shall apply:
>
> (a) Unless the subsequent offense is a major controlled substance offense, the sentences imposed for the prior charged offense and the subsequent offense may run consecutively.

When imposing a consecutive sentence, the trial court must articulate its rationale to facilitate appellate review. *People v Norfleet*, 317 Mich App 649, 664-665; 897 NW2d 195 (2016) (*Norfleet I*). Because there is a "heavy presumption in favor of concurrent sentences," the trial court must clearly explain its reasons "for believing that the strong medicine of a consecutive sentence [is] appropriate." *People v Norfleet (After Remand)*, 321 Mich App 68, 73; 908 NW2d 316 (2017) (*Norfleet II*). The trial court's reasons must be "sufficient to demonstrate an outcome within the range of reasonable and principled outcomes under the circumstances of [the] case," and the court must consider the offenses and the offender in imposing consecutive sentences. *Baskerville*, 333 Mich App at 290.

First, defendant argues that the trial court erred by considering his criminal history as a reason to impose consecutive sentences because his criminal history was accounted for by his prior record variable (PRV) score. Defendant has failed to provide support for the assertion that factors accounted for by the guidelines may not be cited as a basis for imposing consecutive sentences. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). Therefore, defendant has not "properly presented this issue for appellate review." *Id*. at 640.

In any event, defendant's contention that the sentencing guidelines adequately accounted for his criminal history is unavailing. As the trial court noted, defendant had six prior felony convictions and 25 misdemeanor convictions. Even though PRV 2 accounted for four prior felony convictions, see MCL 777.52(1)(a), PRV 2 did not consider defendant's two remaining felony convictions. In addition, although PRV 5 accounted for seven prior misdemeanor convictions, MCL 777.55(1)(a), PRV 5 did not account for defendant's remaining 18 misdemeanor convictions. Finally, neither PRV 2 nor PRV 5 accounted for defendant's propensity to commit theft-related and property-related offenses.

Furthermore, the record does not support defendant's argument that the trial court failed to adequately explain its reasons for imposing consecutive sentences. Rather, the record shows that the trial court articulated several particularized reasons in support of its decision.

The trial court's first reason for imposing consecutive sentences was defendant's disregard for others while he was "in the midst of these crime sprees." This consideration was supported with specific facts and by defendant's own statement that he stole to support his daily methamphetamine use and that he hurt a lot of people that believed in him. The next factor considered by the court was deterrence of others. "The purpose of consecutive-sentencing statutes is to deter persons from committing multiple crimes by removing the security of concurrent sentencing." *Ryan*, 295 Mich App at 408. Therefore, the trial court properly cited deterrence as a justification for imposing consecutive sentences. The trial court next considered the nature of defendant's criminal conduct. The court's findings pertaining to the nature of defendant's criminal conduct were supported by specific details from this case, and this Court has recognized that the circumstances surrounding the sentencing offense are an appropriate consideration in imposing consecutive sentences. *Baskerville*, 333 Mich App at 290. Finally, as discussed above, the trial court properly considered defendant's extensive criminal history, which provided ample justification for the imposition of consecutive sentences.

Overall, the trial court created a thorough and thoughtful record; in doing so, it articulated particularized reasons that demonstrated that the "strong medicine" of consecutive sentencing was warranted. *Norfleet II*, 321 Mich App at 73.

Affirmed.

/s/ Noah P. Hood
/s/ Kathleen Jansen
/s/ Kathleen A. Feeney

-4-