*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JAWWAAD SAADIQ REESE,

Defendant-Appellant.

UNPUBLISHED
February 11, 2021

No. 350618
Wayne Circuit Court
LC No. 18-009807-01-FC

Before: FORT HOOD, P.J., and GADOLA and LETICA, JJ.

PER CURIAM.

Defendant appeals as of right his convictions of eight counts of first-degree criminal sexual conduct, MCL 750.520b(1)(b)(*i*), for each which the trial court sentenced defendant to serve 10 to 20 years' imprisonment. The court specified that Counts 1, 2, 4, 6, and 8 were to be served concurrently with each other, and that Counts 3, 5, and 7 were to be served concurrently with each other but consecutively to Counts 2, 4, and 6. We affirm defendant's convictions, but remand for either a sufficient justification for the consecutive sentencing or for resentencing in accordance with this opinion, and also for ministerial corrections to the judgment of sentence.

## I. BACKGROUND FACTS

In the fall of 2015, when the complainant, AM, was 15 years old, she lived with her mother, younger sister, and defendant, who was her stepfather. According to AM's testimony, one night, after her mother had left for her night shift at a factory and AM's sister was asleep, defendant invited AM to smoke marijuana with him in his truck, which was parked in their driveway. For approximately two weeks, they talked and smoked in the truck. One night, after AM smoked more than usual because defendant told her it would help with an injury, defendant offered to perform massage techniques on AM's ankle that he had learned while he underwent physical therapy. When AM agreed, he took her to the bedroom that he shared with her mother, and had her lie down and watch a movie as he massaged her ankle. AM drifted in and out of consciousness until defendant moved his hands up her leg, after which she "froze." Eventually, defendant removed AM's clothing and performed cunnilingus (Count 1). The next day, defendant told AM that no one could know about what had happened. And, that night, after they smoked in his truck,

-1-

defendant again performed cunnilingus (Count 2) before instructing AM to perform fellatio (Count 3).

Thereafter, AM's mother came home from work early and saw defendant and AM smoking in the truck. AM ran and locked herself in her bedroom, listening as her mother and defendant argued and fought for hours.

The next time defendant invited AM to smoke in his truck, he insisted that they return to the house immediately afterward in case AM's mother came home early again. They then sat on the living room couch and talked until defendant instructed AM to perform fellatio (Count 4) and he performed cunnilingus (Count 5).

On a different day, defendant came home as AM was in the shower. He undressed, entered the shower, and penetrated her vaginally (Count 6) before causing her to perform fellatio (Count 7). A day or two later, while AM's mother and sister were absent, defendant performed cunnilingus for a few minutes before jumping up and leaving the house (Count 8).

The next time defendant attempted to have sexual relations with AM, she informed him that she would no longer comply because it was wrong. Although defendant made several attempts over the next few times he smoked with her, she successfully rebuffed them. Eventually, AM no longer spoke to defendant, nor he to her.

AM did not reveal defendant's sexual assaults to anyone. At that time, she believed that she had to do as defendant instructed. Even after the assaults stopped, AM did not tell her mother because she felt guilty and because she did not want to disturb the family setting given that her mother had become pregnant with defendant's child. The relationship between AM's mother and defendant nonetheless deteriorated with defendant living with them only sporadically.

In November 2017, then 17-year-old AM contacted a counselor on Common Ground's online chat service and asked questions about sexual abuse of minors under the guise of seeking help for a friend who had been abused by her stepfather.[1] AM sought help for three reasons. First, it had become clear to AM that her mother would never leave defendant despite how strained their relationship became. Second, AM was concerned that defendant might sexually abuse her younger sister. Third, AM wondered whether turning 18 would foreclose her opportunity to report the abuse and have defendant held accountable. AM was relieved to learn that she could effectively report defendant even after she turned 18. But because AM struggled with telling her mother and AM was preparing for the birth of her own child, AM did not disclose defendant's abuse. Nevertheless, AM stored the transcript of her online chat in her computer.

Eleven months later, in October 2018, AM's mother discovered the chat transcript on AM's computer, printed it, and, later, confronted AM. She told AM that she believed that defendant had sexually abused AM and that she did not blame AM. She asked AM to tell her what had happened

---

[1] Common Ground is a crisis center.

because there were no details in the transcript. Thereafter, AM's mother accompanied AM to the police station to report defendant's sexual assaults.

Defendant was charged and tried. At trial, AM, AM's mother, and the Common Ground crisis counselor testified. The prosecution also admitted the online chat transcript. No physical evidence was presented. Defendant did not testify, but the defense theory of the case was that AM and her mother had concocted the allegations to hurt defendant.

The jury found defendant guilty as charged, and this appeal followed.

## II. ADMISSIBILITY OF THE ONLINE CHAT TRANSCRIPT

Defendant first argues that the online chat transcript was inadmissible hearsay. However, defendant waived this claim.

Waiver is "the intentional relinquishment or abandonment of a known right." *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000) (quotation marks and citation omitted). A defendant is deemed to have waived an evidentiary error when the defense attorney agrees to admission of the evidence. *People v McDonald*, 293 Mich App 292, 295-296; 811 NW2d 507 (2011). A defendant's waiver of an issue extinguishes any error. *People v Kowalski*, 489 Mich 488, 503-504; 803 NW2d 200 (2011).

Before trial, defense counsel objected to the admission of the online chat transcript. The trial court granted the prosecution's motion to admit a redacted version. After defense counsel withdrew, defendant then obtained new counsel. At trial, defense counsel objected to the admission of the redacted online chat transcript because counsel wanted additional portions of the transcript included. The trial court gave defense counsel an opportunity to review the original copy of the transcript and to make the necessary redactions. The unredacted transcript was then admitted into evidence when defense counsel stated that he had no objection. Counsel's express approval of the admission of the unredacted transcript waived review of the issue. *Id*. Consequently, we decline to consider this issue on its merits because a defendant may not waive an objection in order to pursue a particular strategy and then seek appellate relief over the matter after that strategic maneuver proves unsuccessful. *Carter*, 462 Mich at 214 ("Counsel may not harbor error as an appellate parachute."); *People v Henry (After Remand)*, 305 Mich App 127, 162; 854 NW2d 114 (2014).

Defendant next argues that he received ineffective assistance of counsel when defense counsel approved the jury instructions without requesting a limiting instruction regarding the chat transcript. We disagree.[2]

---

[2] To the extent that defendant argues the trial court erred by not sua sponte giving a limiting instruction regarding the chat transcript, defendant has not preserved this issue, MCR 7.212(C)(5), and, in any event, waived it when counsel specifically approved of the jury instructions as given. *Kowalski*, 489 Mich at 505 n 28 ("[A]n affirmative statement that there are no objections to the

Because defendant failed to preserve this issue by developing a record on this claim in the trial court, our review is limited to the record as it exists. *People v Snider*, 239 Mich App 393, 423; 608 NW2d 502 (2000). "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). We review factual findings for clear error and questions of constitutional law de novo. *People v Dendel*, 481 Mich 114, 124; 748 NW2d 859 (2008), amended 481 Mich 1201 (2008). To establish that he received ineffective assistance, a defendant must first demonstrate that his attorney's performance was deficient, and then that the defendant was so prejudiced by the deficiency that he was denied a fair trial. *Id*. at 125. The decision to request a limiting instruction is a matter of trial strategy. See *People v Rice (On Remand)*, 235 Mich App 429, 444-445; 597 NW2d 843 (1999). Here, defense counsel's decision not to request a limiting instruction was in accord with his stated trial strategy of using the chat transcript substantively to discredit AM's testimony. Therefore, defendant has failed to overcome the strong presumption that his counsel's actions or inactions were sound trial strategy. *People v Horn*, 279 Mich App 31, 40; 755 NW2d 212 (2008). His ineffective assistance of counsel claim fails for this reason.

## III. OTHER-ACTS EVIDENCE

Next, defendant argues that evidence of physical and sexual violence against AM's mother was inadmissible both because he did not receive the required statutory notice, and because the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. We disagree in both respects.

## A. BACKGROUND FACTS

Just before opening statements, outside of the jury's presence, plaintiff moved for the admission of testimony by AM's mother regarding her own physical and sexual abuse by defendant. The trial court ruled that testimony about physical domestic violence was irrelevant and therefore inadmissible, but that testimony about actual sexual assault against AM's mother was relevant and would be admitted. Defense counsel argued vigorously against the admission of this testimony.

AM's mother testified that, when she chose not to have sex with defendant during her pregnancy, he turned on all of the lights in the house late at night and played misogynistic music so loudly that he disrupted the sleep of the entire household. She stopped saying no to defendant so that her children would be able to sleep. When plaintiff's counsel first began to elicit this testimony, defense counsel attempted to object while the witness answered affirmatively. Counsel then said, "Well, I'll let it go." Defense counsel did not elaborate, and plaintiff resumed questioning AM's mother. Regarding physical violence, she testified generally that she and defendant frequently physically fought until she became pregnant in 2016. Specifically, she and defendant "physically and verbally went at it" when she came home and saw AM in defendant's truck smoking marijuana.

---

jury instructions constitutes express approval of the instructions, thereby waiving review of any error on appeal.").

## B. PRESERVATION OF ISSUE AND STANDARD OF REVIEW

As a preliminary matter, we disagree with plaintiff's contention that defense counsel waived this issue when he changed his mind about objecting. Defense counsel's statement that he would "let it go" did not constitute a waiver because defense counsel did not expressly and unequivocally state that he approved of the testimony. See *Kowalski*, 489 Mich at 505. Counsel neither gave any indication of having changed his position, nor forfeited the issue when he decided not to complete his objection after the witness had already answered the question. Under MRE 103, "[o]nce the court makes a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal." Here, the trial court had made a definitive ruling before trial on the admissibility of this testimony, and defendant placed his objection on the record at that time. Because a second objection was not required, this issue is preserved.

We review preserved evidentiary issues for an abuse of discretion, though we review preliminary questions of law de novo. *People v Jackson*, 498 Mich 246, 257; 869 NW2d 253 (2015). An abuse of discretion occurs when a trial court "makes an error of law in the interpretation of a rule of evidence." *Id*. It is also an abuse of discretion when an outcome "falls outside the range of principled outcomes." *People v Warren*, 505 Mich 196, 203; 949 NW2d 125 (2020). Even if error is found, reversal of a defendant's convictions is warranted only if, after reviewing the entire case, it affirmatively appears more probable than not that the error affected the outcome of the case. *People v Moorer*, 262 Mich App 64, 74; 683 NW2d 736 (2004).

## C. NOTICE

We first address defendant's argument that he did not receive the required statutory notice. Under MCL 768.27b, a prosecuting attorney is required to disclose "evidence of the defendant's commission of other acts of domestic violence or sexual assault," "including the statements of witnesses or a summary of the substance of any testimony that is expected to be offered" at least 15 days before trial. MCL 768.27b(1)-(2). Here, AM's mother provided a statement to the police that included the following in the question-and-answer section:

> *Q*. Have you been assaulted by [defendant] in the past?
>
> *A*. Yes, many times.
>
> *Q*. Have you been sexually assaulted by [defendant]?
>
> *A*. I have been forced to have sex with him when I didn't want to.

It is undisputed that the statement was provided during discovery, and more than 15 days before trial. Defendant argues that a document provided during discovery cannot satisfy the notice requirement in MCL 768.27b(2). However, the statute requires the prosecutor to provide one of two things, "statements of witnesses" or "a summary of the substance of any testimony expected to be offered." MCL 768.27b(2). Plaintiff provided the former. Our determination that this document, disclosed in discovery, was properly noticed does not render the notice requirement nugatory, as defendant suggests. By the plain language of the statute, of all the documents that could possibly be provided in discovery, the only documents that would constitute notice under

this statute would be written witness statements about domestic violence or sexual abuse.  The witness statement provided in discovery satisfied the notice requirement in MCL 768.27b(2).

## D.  ADMISSIBILITY OF OTHER ACTS TESTIMONY

We next address defendant's position that the trial court erred when it ruled that testimony regarding defendant's sexual abuse of AM's mother was admissible and allowed evidence of physical abuse to be admitted.  "Under MRE 404(b), the prosecution may not present evidence of a defendant's other crimes, wrongs, or acts in order to show a defendant's propensity to commit a crime." *People v Railer*, 288 Mich App 213, 219; 792 NW2d 776 (2010).  However, the Michigan Legislature has determined that this rule should not apply when a defendant is accused of sexual assault against a child under 16 years of age.  *People v Watkins*, 491 Mich 450, 470-471; 818 NW2d 296 (2012).[3]  MCL 768.27b(1) provides, in relevant part:

> [I]n a criminal action in which the defendant is accused of an offense involving domestic violence or sexual assault, evidence of the defendant's commission of other acts of domestic violence or sexual assault is admissible for any purpose for which it is relevant, if it is not otherwise excluded under Michigan rule of evidence 403.

Therefore, evidence of domestic violence or sexual abuse is admissible under MCL 768.27b(1) if it is relevant to establishing a defendant's character and propensity to commit the type of offense charged, unless it is otherwise excluded under MRE 403.  *Cameron*, 291 Mich App at 610-611.

MRE 403 states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  As a balancing test, "MRE 403 involves two sides of a scale—a probative side and a prejudicial side." *Watkins*, 491 Mich at 486.  In order to effectuate the policy underlying MCL 768.27b, evidence allowed under that statute must be weighed more heavily for its probative value than for its prejudicial effect. *Id*. at 487.

In *Watkins*, our Supreme Court provided an illustrative list of considerations for trial courts when applying MRE 403 in this context:

> (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence

---

[3] *Watkins* analyzed MCL 768.27a, which addresses other acts that a defendant committed against minors.  Here, the other acts were against defendant's wife, an adult, so MCL 768.27b applies.  However, the similarity in language between the two statutes has led this Court to conclude that the Legislature intended the same policy to apply to each statute.  *People v Cameron*, 291 Mich App 599, 609-610; 806 NW2d 371 (2011).

> supporting the occurrence of the other acts, and (6) the lack of need for evidence
> beyond the complainant's and the defendant's testimony. [*Id*. at 487-488.]

Defendant invokes only the first consideration, relying on *People v Denson*, 500 Mich 385, 403; 902 NW2d 385 (2017), to argue that the other acts must be "strikingly similar" to the charged acts to be admitted. Defendant fails to acknowledge that similarity is but one consideration of several rather than a discrete rule of law. More importantly, *Denson* is inapposite here because it did not involve sexual abuse of a minor and therefore did not require the interpretation of MRE 403 in the context of MCL 768.27b.

We conclude that evidence that defendant coerced and manipulated his pregnant wife into having sex when he knew she was unwilling was highly relevant to the charged acts, which involved manipulating and coercing his then 15-year-old stepdaughter into participating in sexual acts with him. The evidence that defendant engaged in physical altercations with AM's mother also has some relevance simply because AM witnessed this behavior many times, and well knew that defendant could resort to violence when frustrated. We conclude that evidence of defendant's sexual manipulation and coercion of his wife was highly relevant to the charged acts, and that evidence of physical violence was also relevant, even if to a lesser degree.

On the other side of the scale, the potential for unfair prejudice from this evidence was quite low. "[U]nfair prejudice refers to the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock." *People v Fisher*, 449 Mich 441, 452; 537 NW2d 577 (1995). Testimony that is brief and not graphic does not tend to inflame the jury such that it interferes with the jury's ability to weigh the evidence logically. *Railer*, 288 Mich App at 220-221. The testimony about the coercive tactics defendant used to obtain sex from his unwilling wife, in addition to being highly relevant, was brief, nongraphic, and highly unlikely to have interfered with the jury's ability to weigh the evidence logically. The testimony of AM's mother that she and defendant "physically and verbally went at it," and that she and defendant frequently engaged in physical conflict until she became pregnant, though certainly less relevant, was brief, included no graphic detail, and made it obvious that the physical violence was committed by each against the other. Weighing the probative value more heavily than the possible prejudice, *Watkins*, 491 Mich at 487, we cannot conclude that the danger of unfair prejudice substantially outweighed the probative value of any of this testimony. The trial court did not abuse its discretion either in its initial ruling regarding this evidence, or in allowing the testimony to stand when defense counsel let it pass without objection at trial. Because there was no error of law, and both results fell within the range of principled outcomes under the circumstances, the trial court did not abuse its discretion with respect to the other-acts evidence. See *Warren*, 505 Mich at 203.

## IV. PROSECUTORIAL MISCONDUCT[4]

---

[4] This Court has explained that a fairer label for most claims of prosecutorial misconduct would be "prosecutorial error," while only the most extreme cases rise to the level of "prosecutorial

Defendant next argues that he was denied a fair trial because the prosecutor, during her closing argument, improperly commented on facts not in evidence. We disagree.

Defendant failed to preserve this issue through a contemporaneous objection or request for a curative instruction. See *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Unpreserved claims of prosecutorial misconduct are reviewed for "outcome-determinative, plain error." *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Carines*, 460 Mich at 763. "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. The burden of establishing these three elements is on the defendant. *Id*. The ultimate question to be determined is whether the defendant received a fair and impartial trial. *People v Brown*, 267 Mich App 141, 152; 703 NW2d 230 (2005). Therefore, "[r]eversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *People v Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003).

"Claims of prosecutorial misconduct are reviewed on a case-by-case basis." *Brown*, 267 Mich App at 152. A reviewing court must examine a prosecutor's alleged wrongful remarks in context, and they must be "evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial . . . ." *Id*. Prosecutors are normally afforded great latitude in their arguments and conduct during trial. *Unger*, 278 Mich App at 236. "They are generally free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *Id*. However, "[a] prosecutor may not make a statement of fact to the jury that is not supported by evidence presented at trial and may not argue the effect of testimony that was not entered into evidence." *Id*. at 241.

Defendant claims that eight different statements by the prosecutor during closing argument drew conclusions based on either facts not in evidence or facts admitted in error. However, no evidence was admitted in error, and the extensive quotations that defendant has provided actually reference no facts that were not in evidence. Defendant's theory of the case was that AM and her mother fabricated the story in order to hurt him, with the strong implication that, if the allegations were true, AM would have told her mother sooner. The prosecutor's theory was that AM was telling the truth, and her delay in telling her mother was the understandable reaction of a 15-year-old girl whose stepfather had groomed and used her for sex. The challenged remarks consisted of only reasonable inferences that might be drawn from the testimony in light of the theory of the case, as is permissible. See *Unger*, 278 Mich App at 236. Additionally, in asking the challenged questions, the prosecutor was encouraging the jury to exercise its collective common sense, which is also appropriate. See *People v Lawton*, 196 Mich App 341, 355; 492 NW2d 810 (1992). Thus, there was no prosecutorial misconduct in this case.

Relatedly, defendant has failed to establish that he received ineffective assistance of counsel with regard to the prosecutor's closing argument. Because the prosecutor's closing

_____

misconduct." *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015). To the extent we use the phrase "prosecutorial misconduct," it is as a term of art.

argument was proper, any objection would have been futile. Defense counsel "is not ineffective for failing to raise meritless or futile objections." *People v Putman*, 309 Mich App 240, 245; 870 NW2d 593 (2015).

## V. SENTENCING

Finally, defendant argues that he is entitled to a remand for a more detailed explanation of why the trial court imposed consecutive sentences. We agree, and also instruct the trial court to make ministerial corrections to the judgment of sentence.

"[T]he decision to impose a consecutive sentence when not mandated by statute is reviewable for an abuse of discretion." *People v Norfleet*, 317 Mich App 649, 664; 897 NW2d 195 (2016) (*Norfleet I*). A trial court abuses its discretion when the outcome chosen falls outside the principled range of outcomes. *Id*. at 665.

Concurrent sentencing is the norm in Michigan, but consecutive sentences may be imposed if specifically authorized by statute. *People v Ryan*, 295 Mich App 388, 401; 819 NW2d 55 (2012), construing MCL 750.520b. MCL 750.520b(3) states: "The court may order a term of imprisonment imposed under this section to be served consecutively to any term of imprisonment imposed for any other criminal offense arising from the same transaction." Distinct crimes arise from the same transaction when they occur within "a continuous time sequence." *Ryan*, 295 Mich App at 402. The parties do not dispute that consecutive sentencing is permissible in this case for those instances in which the action charged in one count was immediately followed by another charged action. This applies to Counts 2 and 3, Counts 4 and 5,[5] and Counts 6 and 7; but not to Counts 1 and 8, which occurred without any additional sexual penetration.

The Michigan Supreme Court has demonstrated a "clear preference for concurrent sentencing." *People v Chambers*, 430 Mich 217, 229; 421 NW2d 903 (1988). Consecutive sentencing, therefore, must be "reserved for those situations in which so drastic a deviation from the norm is justified." *Norfleet I*, 317 Mich App at 665. To facilitate appellate review, the trial court must explain its rationale for each consecutive sentence imposed. *Id*. at 664.

In *Norfleet I*, the trial court imposed five consecutive sentences after the defendant was convicted of seven drug-related offenses. *Id*. at 654. On appeal, this Court determined that the trial court's explanation was insufficient because "the trial court spoke only in general terms, stating that it took into account [the] defendant's background, his history, [and] the nature of the offenses involved." *Id*. at 666 (quotation marks omitted; alteration in original). Retaining jurisdiction, this Court remanded the case, instructing the trial court to "fully articulate" its rationale for the imposition of each consecutive sentence. *Id*. On remand, the trial court imposed consecutive sentences in only one of the five instances, stating that one consecutive sentence was justified by the defendant's extensive and extremely violent criminal history, his failure to be rehabilitated or to obtain gainful employment, his manipulation of addicts and his 18-year-old girlfriend to sell heroin, his long involvement in selling heroin, the large amount of money he made

---

[5] Because the judgment of sentence references the type of penetration for each count, the trial court should correct the reference in Count 5 to accurately identify the penetration as fellatio.

by dealing drugs, and the deterrent effect that consecutive sentencing might have on others. *People v Norfleet (After Remand)*, 321 Mich App 68, 72; 908 NW2d 316 (2017) (*Norfleet II*). On appeal, this Court agreed that "this combination of facts was sufficient to depart from the heavy presumption in favor of concurrent sentences and to order one of the sentences to be served consecutively to another." *Id.* at 73. This Court further stated, "The trial court properly recognized that it could not impose multiple consecutive sentences as a single act of discretion and correctly issued a judgment of sentence in which the remaining sentences are all to be served concurrently." *Id.*

In the instant case, the trial court explained its decision to impose consecutive sentences as follows:

> This is a situation where a stepfather took advantage of his stepdaughter and plied her with marijuana . . . .

> She mentioned on the first instance she was quite high and was kind of fading in and out when he offered to rub her ankle. At first, it was rubbing her ankle, and then he started moving up her leg. And she was fading in and out, but she became very alert as his hand crept higher and higher on her leg.

> This is disturbing behavior. And I understand all these letters of support, and you've always been respectful with your family members, but according to what we heard in this trial, that was not the case with your stepdaughter who's not your blood relative, and that's why I scored the predatory conduct, and that's why I'm going to impose this sentence.

> It is the sentence of this Court that on all counts you be sentenced to a period of incarceration of 10 years to 20 years, and Counts 1, 2, 4, 6, and 8 will run concurrent with each other . . . .

> Counts 3, 5, and 7 will run concurrent with each other and will be consecutive to Counts 2, 4, and 6.[6]

A short time later, the trial court added the following:

---

[6] The parties agree that the trial court erred to the extent that the judgment of sentence provides that the sentences imposed for Counts 3, 5, and 7 are consecutive to Counts 2, 4, and 6. As we have already discussed, when imposing a term of imprisonment for a first-degree criminal sexual conduct conviction, the sentencing court may order the sentence "to be served consecutively to any term of imprisonment imposed for any other criminal offense arising from the same transaction." MCL 750.520b(3). In this case, for example, Count 3 may be consecutive to Count 2, Count 5 may be consecutive to Count 4, and Count 7 may be consecutive to Count 6. On remand, the court must amend the judgment of sentence in conformance with MCL 750.520b(3).

And for the record, I do feel these are proportional sentences, given that the guidelines were slightly lower than the People were anticipating when they prepared their memo and brief.

But I don't believe that they take into account the serious nature and the predatory nature of his conduct in this case, and the impact that it has had on [AM's] life, and for those reasons I gave that sentence that I gave.

The trial court's explanation for imposing three consecutive sentences, in essence, was that defendant "plied" AM with marijuana before sexually assaulting her, and that the court did not believe the guidelines sufficiently reflected the seriousness of these crimes or their effect on the victim. This explanation was only slightly more specific than the overly general explanation found to be deficient in *Norfleet I*, and is similarly devoid of separate explanations for each of the three consecutive sentences. The trial court's rationale falls short of the level of specificity and substantive content this Court approved to justify only one consecutive sentence in *Norfleet II*. Accordingly, we remand this case to the trial court for articulation of sufficient justification for each of the three consecutive sentences, or for resentencing should the trial court deem it necessary in order to comply with this Court's guidance in *Norfleet* and in this opinion.

We affirm defendant's convictions, but remand for ministerial corrections to the judgment of sentence, and for either a sufficient explanation for the consecutive sentencing or for resentencing. We do not preclude the trial court from imposing consecutive sentences again, provided it does so in accordance with established caselaw, MCL 750.520b(3), and this opinion. We do not retain jurisdiction.

/s/ Karen M. Fort Hood
/s/ Michael F. Gadola
/s/ Anica Letica