*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

JOSHUA JEREMIAH EUBANKS,

       Defendant-Appellant.

UNPUBLISHED
April 13, 2023

No. 358688
Genesee Circuit Court
LC No. 17-042366-FC

Before: GADOLA, P.J., and PATEL and MALDONADO, JJ.

PER CURIAM.

A jury convicted defendant of first-degree home invasion, MCL 750.110a(2), and conspiracy to commit first-degree home invasion, MCL 750.157a and MCL 750.110a(2). But the jury acquitted defendant of first-degree felony murder, MCL 750.316(1)(b), assault with intent to rob while armed, MCL 750.89, armed robbery, MCL 750.29, and five counts of felony-firearm, MCL 750.227b(1). The trial court departed upward from the sentencing guidelines range and imposed consecutive sentences of 140 to 240 months' imprisonment for each conviction. We affirmed defendant's convictions on appeal, but remanded for the trial court to revisit its sentence in light of *People v Beck*, 504 Mich 605; 939 NW2d 213 (2019).[1] On remand, the trial court once against departed from the guidelines range, imposing consecutive sentences of 85 to 240 months' imprisonment for each conviction. We find that that it was not outside the range of reasonable and principled outcomes to impose discretionary consecutive sentences, that the sentences are proportionate to the seriousness of the offense and the offender, and that the sentences were not based on acquitted conduct. We affirm.

---

[1] *People v Alexander*, unpublished per curiam opinion of the Court of Appeals, issued March 11, 2021 (Docket Nos. 349053, 349055, 349056 & 349158) ("*Eubanks I*"). Defendant was tried jointly with codefendants Jordan Alexander, Zicary Carpenter, and Tyler Pagel, who also were convicted of various offenses. All four defendants appealed their convictions and their appeals were consolidated in this Court, with codefendant Alexander's appeal serving as the lead appeal.

## I. BACKGROUND

## A. FACTUAL BACKGROUND

Defendant's convictions arise from his participation in a home invasion in July 2017, along with his three codefendants, which led to the shooting death of a homeowner. In defendant's first appeal, we recounted the factual background surrounding the crimes as follows:

> Defendants' convictions arise from a home invasion at the home of Albert and Janice Ballard in Flint during the early morning hours of July 11, 2017. Janice was physically assaulted and Albert was shot and killed during the offense. The prosecutor's theory at trial was that all four defendants, and a fifth person, Dreshavon Jones, planned and participated in the home invasion. Jones pleaded guilty to several charges pursuant to a plea agreement that required him to testify truthfully at defendants' trial. According to Jones, he and the other defendants committed a home invasion at a different home, belonging to Austin Papkey, earlier in the night and then targeted the Ballard home. Evidence of the Papkey home invasion was introduced at defendants' trial. Jones testified that when the group entered the Ballard home, Carpenter gave him a .40-caliber firearm, which Carpenter said was not loaded, and Alexander was holding a nine-millimeter firearm and wearing a red hooded sweatshirt.

> Janice Ballard testified that she awoke to find an intruder wearing a red hooded sweatshirt inside her bedroom. The intruder demanded to know where she kept her money. When Janice did not immediately respond, the intruder hit her. Albert was downstairs, where he had apparently fallen asleep while watching television. According to Janice, Albert owned a .45-caliber firearm that he kept in one of the kitchen cupboards. While Janice was upstairs in her bedroom, she heard voices coming from downstairs saying, "he's got a gun." The intruder in Janice's room then left the room and Janice heard an exchange of gunfire coming from downstairs. She then saw Albert coming up the stairs holding his firearm, followed by the sound of breaking glass, and then additional gunfire. Albert was shot during the offense and died from his injuries.

> Jones testified that after the shooting erupted, he, Alexander, and Eubanks all jumped out a bedroom window to escape from the house and then fled on foot, climbing a fence and discarding some clothing and other items along the way. Shortly after the offense, Carpenter and Pagel were involved in a car accident at an intersection approximately half a mile from the crime scene when their car, which was being driven without headlights, collided with another vehicle. When the police responded to the accident scene, Carpenter and Pagel were still present and the police discovered that Carpenter had a gunshot wound. A wallet belonging to Austin Papkey, the victim of the earlier home invasion that night, was found in Carpenter's clothing. Nine-millimeter ammunition, with hollow points, was found inside the car. The car was registered to Alexander, whose identification was also found inside the car.

The police recovered video footage capturing Alexander, Eubanks, and Jones at different locations near the crime scene shortly after the offense. The prosecution also presented evidence that on the morning after the offense, Alexander, Eubanks, and Jones made statements to various individuals implicating themselves and others in the offense. Evidence of cell phone mapping technology also placed defendants near the crime scene at the time of the offense. In addition, several items associated with the crime were submitted for DNA testing, and DNA consistent with each defendant's DNA profile was found on different items. In particular, a red shirt found in an alley close to the Ballard home contained DNA consistent with Alexander's DNA profile, and a black hoodie found in some bushes near the Ballard home contained DNA consistent with Eubanks's DNA profile.

The police did not recover any weapons other than Albert's .45-caliber firearm that was found at the scene, but the police recovered both spent and live ammunition from the Ballard home that was consistent with two different weapons—a nine-millimeter firearm and Albert's .45-caliber firearm. Bullet fragments recovered from Albert's body contained hollow points that were consistent with the nine-millimeter ammunition found in the car that Carpenter and Pagel were driving at the time of their accident. The police found a receipt inside the car that indicated that the ammunition was purchased from a Dunham's store on July 1, 2017. The police obtained video footage from the Dunham's store that showed Carpenter and Alexander purchasing the ammunition.

All four defendants were charged with first-degree felony murder, first-degree home invasion, conspiracy to commit first-degree home invasion, armed robbery, assault with intent to rob while armed, and several counts of felony-firearm. The jury found Alexander guilty of all counts as charged. The jury acquitted Carpenter of felony-murder and assault with intent to rob while armed, as well as the felony-firearm counts associated with those offenses, but found him guilty of first-degree home invasion, conspiracy to commit first-degree home invasion, armed robbery, and the felony-firearm charges associated with those three counts. The jury found defendants Eubanks and Pagel guilty of first-degree home invasion and conspiracy to commit first-degree home invasion, and also found Pagel guilty of armed robbery, but acquitted those defendants of all other charges, including all counts of felony-firearm. [*Eubanks I*, unpub op at pp 3-4.]

B. OVERVIEW OF PROCEDURAL POSTURE

At the initial sentencing, the trial court departed upward from the sentencing guidelines range of 57 to 95 months and imposed consecutive sentences of 140 to 240 months' imprisonment for each conviction. In his first appeal, defendant argued that the trial court improperly relied on acquitted conduct to impose a harsher sentence outside the recommended guidelines range and to impose consecutive sentences, contrary to *Beck*.[2] After reviewing the trial court's stated rationale for imposing sentence, we were "unable to discern whether the trial court relied on the other crimes

---

[2] *Beck* was decided after defendant was sentenced.

-3-

of which Eubanks was acquitted and other codefendants were convicted." *Eubanks I*, unpub op at 32. We remanded for the purpose "of allowing the trial court to revisit its sentence of [defendant] in light of *Beck*," and instructed the court as follows:

> On remand, the trial court shall make an appropriate record properly justifying its sentencing decision in light of the holding in *Beck*, whether it imposes the same sentence or determines that resentencing is warranted and resentences Eubanks. See [*People v Steanhouse*, 500 Mich 453, 476; 902 NW2d 327 (2017)] (stating that resentencing is required if the trial court "abused its discretion in applying the principle of proportionality by failing to provide adequate reasons for the extent of the departure sentence imposed"). Pursuant to *Beck*, acquitted conduct would not be an adequate reason for departure. *Beck*, 504 Mich at 626-627, 629. Furthermore, the holding in *Beck* actually extends further and is not limited only to the question of whether acquitted conduct may justify a departure: The *Beck* Court stated, "We hold that due process bars sentencing courts from finding by a preponderance of the evidence that a defendant engaged in conduct of which he was acquitted." *Id*. at 629. Thus, pursuant to *Beck*, it violates due process to consider acquitted conduct in scoring the sentencing guidelines. See also *People v Roberts*, 506 Mich 938; 949 NW2d 455 (2020) (holding that pursuant to *Beck*, the trial court erred by relying on acquitted conduct in scoring offense variable 9 and in imposing an upward departure sentence).

> \* \* \*

> We clarify that we only decide at this juncture that the trial court must address these issues under the proper standard in light of *Beck*. Thus, our opinion on these sentencing issues should not be understood to extend further. [*Eubanks I*, unpub op at 32.]

On remand, the parties agreed that Offense Variables (OVs) 1, 2, and 3 should all be rescored at zero points, which resulted in a minimum sentencing guidelines range of 51 to 85 months' imprisonment. The trial court determined that a departure from the guidelines range was warranted and resentenced defendant to 100 to 240 months' imprisonment for each conviction, to be served consecutively.

Defendant thereafter filed a motion for resentencing, arguing that OVs 12 and 13 were also incorrectly scored and should be scored at 10 points and zero points, respectively. The prosecutor agreed. At defendant's second resentencing, it was undisputed that the new guidelines range was 36 to 60 months' imprisonment. The trial court found that an upward departure from the guidelines range was justified because the range did not adequately reflect the seriousness of the offense. The court imposed a sentence of 85 to 240 months' imprisonment for each conviction, to be served consecutively. Defendant now appeals his sentences.

### III. SENTENCING CHALLENGES

Defendant argues that the trial court imposed disproportionate sentences, violated his due-process rights by relying on acquitted conduct, and abused its discretion by imposing a consecutive sentence. We disagree.

### A. STANDARDS OF REVIEW

"A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). When reviewing a departure sentence for reasonableness, we must review "whether the trial court abused its discretion by violating the principle of proportionality . . . which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017) (cleaned up). "An abuse-of-discretion standard recognizes that there may be more than one principled outcome and the trial court may not deviate from that principled range of outcomes." *People v Boykin*, ___ Mich ___, ___; ___ NW2d ___ (2022) (Docket Nos. 157738, 158695); slip op at 6. "The existence of a departure factor is a factual question reviewed for clear error on appeal." *People v Dixon-Bey*, 340 Mich App 292, 296; 985 NW2d 904 (2022). A trial court's decision to impose consecutive sentences is also reviewed for an abuse of discretion. *People v Baskerville*, 333 Mich App 276, 290; 963 NW2d 620 (2020).

### B. DEFENDANT'S DEPARTURE SENTENCES

We initially consider defendant's claim that his sentences of 85 to 240 months' imprisonment, which represent a departure from the sentencing guidelines recommended minimum sentence range of 36 to 60 months, are disproportionate and were based in part on the trial court's improper consideration of acquitted conduct. We disagree.

In *Dixon-Bey*, 340 Mich App at 296 (cleaned up), we explained:

A number of factors have been deemed appropriate to consider when determining the proportionality of a departure sentence, including the seriousness of the offense; factors not accounted for by the guidelines, such as the prior relationship between the victim and the defendant, a lack of remorse, or a low potential for rehabilitation; and factors accounted for by the guidelines but given inadequate weight under the circumstances. Departures are appropriate when the guidelines do not adequately account for important factors legitimately considered at sentencing.

"An appropriate sentence should give consideration to the reformation of the offender, the protection of society, the discipline of the offender, and the deterrence of others from committing the same offense." *Boykin*, ___ Mich at ___; slip op at 7. But "these are not the only relevant sentencing criteria and trial courts are not required to consider each of these factors when imposing a sentence." *Id.*

When a trial court imposes a departure sentence, its "articulation must be sufficiently detailed to facilitate appellate review." *People v Smith*, 482 Mich 292, 311; 754 NW2d 284 (2008). "This includes an explanation of why the sentence imposed is more proportionate to the offense

and the offender than a different sentence would have been." *Id*. And the court must explain "the *extent* of the departure independent of the reasons given to impose a departure sentence." *Id*. at 305-306. However, a "trial court is not required to use any formulaic or 'magic' words in doing so." *People v Babcock*, 469 Mich 247, 259 n 13; 666 NW2d 231 (2003).

In *Beck*, our Supreme Court held that "the use of acquitted conduct to sentence a defendant more harshly violates due process . . . ." The Court explained how the use of acquitted conduct is distinguishable from the use of uncharged conduct:

> When a jury has made no findings (as with uncharged conduct, for example), no constitutional impediment prevents a sentencing court from punishing the defendant as if he engaged in that conduct using a preponderance-of-the-evidence standard. But when a jury has specifically determined that the prosecution has not proven beyond a reasonable doubt that a defendant engaged in certain conduct, the defendant continues to be presumed innocent. To allow the trial court to use at sentencing an essential element of a greater offense as an aggravating factor, when the presumption of innocence was not, at trial, overcome as to this element, is fundamentally inconsistent with the presumption of innocence itself. [*Beck*, 504 Mich at 626-627 (cleaned up).]

We are not persuaded that the challenged departure sentences are disproportionate to the seriousness of the offenses of which defendant was convicted and defendant's background, or that the sentences were improperly based on acquitted conduct. The trial court's comments at resentencing made it very clear that it was considering only *defendant's* actions in committing a home invasion in the middle of the night of a home occupied by elderly residents, who were asleep, after previously participating in a similar offense against another victim earlier that night, and the court repeatedly stated that it was not holding defendant accountable for Albert's murder. The court did not clearly err in identifying factors not adequately accounted for in the scoring of the sentencing guidelines. Defendant has not demonstrated any basis for concluding that the principle of proportionality was violated, *Steanhouse*, 500 Mich at 471, or that his sentences were based on acquitted conduct in violation of *Beck,* 504 Mich at 626-627. Accordingly, we find that the court did not abuse its discretion.

## C. CONSECUTIVE SENTENCING

Defendant also argues that the trial court abused its discretion by imposing the "strong medicine" of consecutive sentences. We disagree.

"In Michigan, concurrent sentencing is the norm, and a consecutive sentence may be imposed only if specifically authorized by statute." *People v Ryan*, 295 Mich App 388, 401; 819 NW2d 55 (2012) (quotation marks and citation omitted). In this case, consecutive sentencing was authorized by MCL 750.110a(8), which provides that "[t]he court may order a term of imprisonment imposed for home invasion in the first degree to be served consecutively to any term of imprisonment imposed for any other criminal offense arising from the same transaction." When imposing a consecutive sentence, the trial court must articulate its rationale in order to facilitate appellate review. *People v Norfleet*, 317 Mich App 649, 664-665; 897 NW2d 195 (2016) (*Norfleet I*). Because there is a "heavy presumption in favor of concurrent sentences," the trial court must

clearly explain its reasons "for believing that the strong medicine of a consecutive sentence was appropriate" for the case at hand. *People v Norfleet (After Remand)*, 321 Mich App 68, 73; 908 NW2d 316 (2017) (*Norfleet II*).

The record discloses that the trial court gave ample reasons for its decision to impose consecutive sentences and it emphasized that its decision was based only on its consideration of the crimes of which defendant was convicted and not on the actions of any of the codefendants. The court stated particularized reasons for imposing consecutive sentences, and it is clear from the court's statements that its decision to impose consecutive sentences was limited to a consideration of defendant's conduct of which he was convicted, and not the actions of any of the codefendants or conduct of which defendant was acquitted. It is also apparent from the court's statements that it was aware of, and carefully weighed, the serious and punitive effect of the consecutive sentences imposed. See *People v Chambers*, 430 Mich 217, 231; 421 NW2d 903 (1988) (observing generally that the trial court should be aware of the punitive impact of a consecutive sentence at the time of its imposition). Accordingly, we find that the court did not abuse its discretion by imposing consecutive sentences.

Affirmed.

/s/ Michael F. Gadola
/s/ Sima G. Patel
/s/ Allie Greenleaf Maldonado