*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

KHAVAREE DESHAWN NASH,

Defendant-Appellant.

UNPUBLISHED
October 14, 2024
11:08 AM

No. 366045
Kent Circuit Court
LC No. 22-003006-FC

Before: YATES, P.J., and CAVANAGH and MARIANI, JJ.

PER CURIAM.

Defendant, Khavaree Deshawn Nash, was found guilty by a jury of second-degree murder, MCL 750.317; carrying a concealed weapon, MCL 750.227; carrying a gun during the commission of a felony (felony-firearm), MCL 750.227b; and careless, reckless, or negligent use of a firearm resulting in injury or death, MCL 752.861. On appeal, defendant asserts that the trial court abused its discretion by permitting witnesses called by the prosecution to testify before the jury in prison garb. Defendant also contends that his Confrontation Clause rights were violated when a witness's testimony from defendant's preliminary examination was read at trial. Beyond that, defendant has submitted a Standard 4 brief on his own behalf raising several issues.[1] We affirm.

## I. FACTUAL BACKGROUND

On the night of May 29, 2021, PM invited a group of his friends to come over to his house on Prince Street in Grand Rapids. Three of his friends—IN, MW, and KH—arrived at PM's house in a stolen car at approximately 4:40 a.m. At about the same time, three other young people—KS, TS, and JH—drove up in a different stolen car. KS was holding a gun, and the three young men in the other stolen car devised a plan to steal KS's firearm, so they drove to pick up another friend, JC, to assist them. Meanwhile, at a nearby house, defendant and two of his friends—DH and RJ—

---

[1] "A standard 4 brief refers to a brief filed by the defendant *in propria persona* in which he or she raises issues on appeal against the advice of counsel." *People v Ryan*, 295 Mich App 388, 392 n 1; 819 NW2d 55 (2012).

were in the driveway drinking and smoking marijuana. They saw the two stolen cars slowly drive past them and then park down the street. Some of the passengers in the stolen cars were wearing ski masks, but someone in defendant's group was able to recognize one passenger.

Defendant and DH went down the street in the direction of the stolen cars, and they joined the gathering. As the group approached KS, who was seated with a gun in his lap, a confrontation ensued. JC came out of the back seat of one car and tried to take KS's gun. During a struggle for the gun, the bottom plate came off and the bullets fell out of the magazine. But one round remained in the chamber. KS fired that last round in the chamber into the air to scare off JC and anyone else who might try to rob him.

What happened next is not entirely clear. In response to the shot that KS fired into the air, several shots were fired back. One of the shots hit JC in the head and killed him. Defendant was accused of firing the shot that killed JC. Some young people who were at the scene testified that they saw defendant turn around and then they saw two flashes from his hand, which they presumed held a gun. Defendant's friends, RJ and DH, testified at defendant's trial wearing prison garb and admitted that their drug use made the night of the shooting hard to remember. One witness testified that, after the shooting, defendant posted a message on Snapchat saying: "sorry, bro. I didn't mean to."

After a five-day trial in February 2023, defendant was convicted by jury verdict of second-degree murder rather than the greater offense of open murder, felony-firearm, carrying a concealed weapon, and careless, reckless, or negligent use of a firearm resulting in injury or death. Defendant was subsequently sentenced to prison terms on all charges, and he then filed this appeal of right.

## II.  LEGAL ANALYSIS

Defendant presents two arguments on appeal through counsel. First, he insists that the trial court abused its discretion by allowing two witnesses to testify before the jury in their prison garb. Second, defendant faults the trial court for conducting an inadequate inquiry before permitting the prosecution to present the preliminary examination testimony of a witness deemed "unavailable" because of memory loss resulting from an injury. In a separate Standard 4 brief, defendant suggests that several defects undermine his convictions. We shall address these arguments in turn.

### A.  WITNESSES TESTIMONY IN PRISON GARB

Defendant claims the trial court abused its discretion by permitting two witnesses to testify at trial in their prison attire. Defendant contends that, although those witnesses were called by the prosecution, they were the only witnesses who testified in his favor, so their appearance in prison garb violated his right to due process. A trial court's rulings in controlling the course of a trial are reviewed for an abuse of discretion. *People v Banks*, 249 Mich App 247, 256-257; 642 NW2d 351 (2002). Whether a defendant has been afforded due process is a constitutional issue subject to de novo review. *People v Propp*, 508 Mich 374, 380; 976 NW2d 1 (2021). To establish a violation of due process that warrants the reversal of a conviction, "a defendant must prove prejudice to his defense." *People v McGee*, 258 Mich App 683, 700; 672 NW2d 191 (2003).

As a matter of due process, the government cannot "compel an accused to stand trial before a jury while dressed in identifiable prison clothes . . . ." *Estelle v Williams*, 425 US 501, 512; 96

S Ct 1691; 48 L Ed 2d 126 (1976). Accordingly, the trial court must grant a defendant's request to wear civilian clothing during trial. *People v Harris*, 201 Mich App 147, 151; 505 NW2d 889 (1993). But with respect to testifying witnesses other than the defendant, this Court has explained that "we do not believe that the handcuffing or shackling of a defense witness . . . adversely and unfairly affects a criminal defendant's presumption of innocence, thereby undermining the fairness and impartiality of the trial." *Banks*, 249 Mich App at 259.

Here, the prosecution called two friends of defendant to testify about what they saw on the night of the shooting. The prosecutor stated that both of them were wearing "jail greens," or prison attire, because they were incarcerated on charges unrelated to this case. RJ testified that he had no recollection of the incident. He admitted that defendant was his friend and that he was not aware that JC had died, but he refused to testify further. The prosecutor suggested getting RJ an attorney "so he can go through his rights," and the trial court temporarily excused RJ. The trial court then excused the jury, and defense counsel opined that RJ "came up in prison greens, and I think that was prejudicial to the defense," so she sought a mistrial. The trial court denied the motion, stating:

> You're objecting because he's in cuffs, he's in greens. And I believe that a lot of the testimony that has already been given is prejudicial to your client. This is a murder trial [so] a lot of the testimony that we've heard already is going to be prejudicial. . . . And right now, I don't see any basis for a mistrial because a witness has come in who's in custody and has taken the stand, and has so refused to testify. A witness that apparently the People had not talked to. A witness that was, again by testimony of other witnesses, present at the time of the deceased—the time he was shot and killed. So I'm going to deny that motion.

Next, outside the presence of the jury, DH said he intended to "plead the Fifth" because "I don't remember. It was two years ago. I told you then I was intoxicated that night and it had been two whole years." But DH eventually agreed to testify. The prosecutor noted that DH was also in "jail greens." DH admitted that he was "riding around" with defendant and RJ on the day of the shooting, but he explained that he did not remember where they were because "I was high. I was off pills." DH testified that he was "running around" and "in and out of sleep the whole day." DH stated that they went to Prince Street and two other vehicles came to the area, including the vehicle with JC in it. DH confirmed that he and defendant went up to the vehicle in which JC was seated. DH testified that, shortly after, he and defendant were walking back to defendant's vehicle when he heard gunshots, and there were "too many to count." DH and defendant ran to defendant's car and drove away. DH explained that he did not see the shooter and that defendant was not carrying a firearm that night.

After DH's testimony, RJ was recalled to the witness stand, and he continued to testify that he did not remember the events of the shooting because of his heavy drug use. But RJ did confirm that defendant generally did not carry firearms.

Precedent dictates that the trial court cannot compel a defendant to appear before the jury in prison garb, see *Williams*, 425 US at 512; *Harris*, 201 Mich App at 151, but "we do not believe that the handcuffing or shackling of a defense witness also adversely and unfairly affects a criminal defendant's presumption of innocence . . . ." *Banks*, 249 Mich App at 259. "While handcuffs on

a testifying witness other than the defendant sends the message to the jury that the court considers the witness to be untrustworthy and even dangerous, it does not send a concurrent suggestion that the defendant is a person predisposed to commit crimes or that the defendant is a dangerous person who cannot be trusted." *Id*. Here, the two witnesses at issue were neither shackled nor handcuffed; they simply testified in prison garb. Additionally, they were called as witnesses by the prosecution, not the defense. Finally, the record contains no evidence that either witness was required to appear in prison garb after requesting to testify in civilian clothes. Therefore, the trial court did not abuse its discretion by permitting the two witnesses to testify in prison attire.

## B. TESTIMONY FROM UNAVAILABLE WITNESS

On the second day of trial, PM was called as a witness by the prosecution, but PM testified that "I don't remember nothing from that day" of the shooting because he had recently suffered a head injury. PM did confirm that he had "had an accident" and his memory was impaired because of that accident, but he was unable to offer any other meaningful testimony. To fill in the details, the prosecution called PM's mother as a witness, and she testified that the accident occurred after PM had testified at defendant's preliminary examination. She also stated that PM's memory loss from the accident was genuine. Based on the record developed through the testimony of PM and his mother, the trial court declared PM unavailable, authorizing the prosecution to read to the jury PM's testimony during defendant's preliminary examination. On appeal, defendant faults the trial court for declaring PM unavailable based on purportedly scant evidence of his head injury and the resulting memory loss. We review the trial court's finding that PM was unavailable for clear error. *People v Garland*, 286 Mich App 1, 7; 777 NW2d 732 (2009).

Defendant's argument rests on both the Confrontation Clause and MRE 804(a), which lists "criteria for being unavailable" as a witness. The Confrontation Clause provides that "the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." US Const, Am VI. Analysis under the Confrontation Clause requires two separate inquiries: "(1) [d]oes the person in controversy comprise a 'witness against' the accused under the Confrontation Clause; and (2) if so, has the accused been afforded an opportunity to 'confront' that witness under the Confrontation Clause?" *People v Fackelman*, 489 Mich 515, 562; 802 NW2d 552 (2011). The language of MRE 804(a)(3) deems a declarant-witness unavailable if the declarant-witness "has a lack of memory of the subject matter of the declarant's statement[.]"[2] According to MRE 804(b)(1), when a declarant is "unavailable" at trial, the declarant's former testimony can be admitted at trial if the testimony was "given as a witness at another hearing of the same or a different proceeding," and the opposing party "had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination."

PM testified at defendant's preliminary examination that defendant was present at the scene of the shooting, that defendant approached KS's vehicle, and that defendant returned fire after the first shot was fired into the air. Over defendant's objection, the trial court found PM "unavailable" due to his loss of memory and permitted the prosecution to read PM's testimony from defendant's

---

[2] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024. See ADM File No. 2021-10, 512 Mich lxiii (2023). We rely on the version of the rules in effect at the time of trial.

preliminary examination. The trial court determined that even if PM "didn't have a traumatic brain injury . . . he could just not remember and that would be enough to make him unavailable." Thus, the jury could hear PM's prior testimony. Defendant faults the trial court for failing to substantiate PM's claim of head trauma before finding him unavailable, reasoning that PM was not unavailable under MRE 804(a)(3) absent "objective, medical evidence of a recent head injury." But defendant has offered no caselaw to support his contention. MRE 804(a)(3) states that a witness is considered unavailable if the witness has a lack of memory of the subject matter. Consequently, the trial court did not commit clear error by finding that PM was "unavailable" under MRE 804(a)(3). *Garland*, 286 Mich App at 7-8 (upholding "admission of the victim's preliminary examination testimony" despite the contention that that ruling "violated defendant's right to confront the witnesses against him and violated the rule against hearsay").

Defendant attacks the propriety of reading PM's preliminary examination testimony to the jury because the preliminary examination did not afford defense counsel an adequate opportunity to cross-examine PM. In *People v Adams*, 233 Mich App 652, 659; 592 NW2d 794 (1999), this Court reasoned that MRE 804(b)(1) permitted the trial court to admit the declarant's preliminary examination testimony because the "defense counsel had an opportunity and similar motivation to develop her testimony on cross-examination." Additionally, this Court concluded that the "use of the preliminary examination testimony does not violate defendant's constitutional right to confront prosecutorial witnesses," *id*., because "that testimony bears satisfactory indicia of reliability." *Id*. at 660. Furthermore, the Confrontation Clause "guarantees only an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *United States v Owens*, 484 US 554, 559; 108 S Ct 838; 98 L Ed 2d 951 (1988) (quotation marks and citation omitted). Although defendant insists that he was not afforded the opportunity to cross-examine PM about important subjects, the Confrontation Clause does not guarantee cross-examination to whatever extent the defense desires; it requires an opportunity to cross-examine the witness effectively. See *Owens*, 484 US at 559. Here, defense counsel had the opportunity and a similar motive to cross-examine PM at the preliminary examination, see MRE 804(b)(1), so defendant was not denied his constitutional right to confrontation when the trial court permitted PM's prior testimony to be read into the record at defendant's trial.

## C. ISSUES IN STANDARD 4 BRIEF

Like many Standard 4 briefs, defendant's submission is difficult to understand, but we can identify several arguments that defendant seems to be making in his brief. First, defendant appears to challenge the prosecution's reference to statements from KH in the prosecution's appellate brief. Second, defendant faults the prosecution for introducing testimony about a comment on Snapchat that was attributed to him. Third, defendant insist that he received ineffective assistance of counsel at trial. We will give separate consideration to each of those three issues.

### 1. COMMENTS OF KH IN THE PROSECUTION'S APPELLATE BRIEF

Defendant faults the prosecution for improperly including a statement of KH in its brief on appeal. MCR 7.212(C)(6), which prescribes the requirements for the contents of an appellate brief, mandates that "[a]ll material facts, both favorable and unfavorable, must be fairly stated without argument or bias." MCR 7.212(D)(1) states "the appellee's brief must conform to subrule (C)." And MCR 7.216(C)(1)(b) enables this Court to "assess actual and punitive damages or take other

disciplinary action when it determines that an appeal or any of the proceedings in an appeal was vexatious" because an appellate brief "grossly disregarded the requirements of a fair presentation of the issues to the court."

The prosecution cited KH's statement in identifying the "great deal of evidence in support of the jury finding Defendant guilty." The prosecution's omission of KH's testimony that he lied in response to the investigative subpoena because of pressure from officers to tell them what they "wanted to hear" was not a gross disregard of the requirements of a fair presentation of the issues to this Court. See MCR 7.12(C)(1)(b). No significant text was omitted, and the quotation was not repeated. The prosecution's reference to KH's statement that he "saw [d]efendant with a gun" on the night of the shooting constituted a single sentence in the prosecution's brief. Accordingly, the prosecution's use of KH's statement in its brief does not qualify under MCR 7.216(C)(1)(b) as a gross disregard of the fair-presentation requirements.

## 2. THE SNAPCHAT POST

At trial, TS testified that she saw a post from defendant on Snapchat containing "[w]ords to the effect of sorry, bro. I didn't mean to." Defendant contends that TS's testimony on that point was not corroborated, so the jury's reliance on the testimony violated his right to due process. This argument is unavailing. "[O]nly the jury may determine the credibility of a witness or the weight to be afforded any evidence," even if the evidence is not corroborated, and the jury "may convict a defendant based solely on the testimony of an accomplice." *People v Baskerville*, 333 Mich App 276, 283; 963 NW2d 620 (2020). Accordingly, corroborating evidence was not required for TS's testimony about the Snapchat post, and defendant was not prejudiced by the presentation of such testimony at trial without supporting evidence. See *McGee*, 258 Mich App at 700.

## 3. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant contends that he was denied the effective assistance of counsel because defense counsel failed to challenge the prosecution's theory regarding the firearm used on the night of the shooting and also failed to contact a witness whom defendant requested to be called. A defendant who requests a new trial based upon ineffective assistance of counsel must show "that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). The effective assistance of an attorney is presumed, and the defendant bears a heavy burden to prove otherwise. *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). Furthermore, the defendant "has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel." *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

Officer Brandon Romero of the Grand Rapids Police Department (GRPD) testified that, on December 2, 2020, he pulled over a vehicle occupied by defendant, QS, and another individual. The vehicle contained three firearms that were registered to a woman who testified that she gave the guns to QS in July 2020. She stated that one of the firearms was a "Sig 9 millimeter" pistol and QS never returned the firearm to her. A firearms examiner for the Michigan State Police stated that he analyzed the nine-millimeter cartridge casings found at the location of the shooting in this case, which led him to conclude that all "four of those shell casings were fired from that Glock 19,

9 millimeter firearm." GRPD Officer James Smith testified that, in September 2021, four months after the shooting, following an unrelated investigation, he recovered a Glock 19, nine-millimeter firearm. During closing arguments, the prosecutor argued that "we know that defendant had access to that gun" on the night of the shooting because of defendant's connection to QS. According to defendant, his attorney was deficient in handling the issue of the firearm. We disagree.

Defense counsel's performance did not fall below an objective standard of reasonableness because the record reveals that defense counsel challenged the prosecution's theory during cross-examination of witnesses called by the prosecution. Defense counsel cross-examined the firearms examiner and asked questions about the cartridges that led to the conclusion that the shell casings found at the scene of the shooting were from the Glock 19, nine-millimeter firearm. Also, defense counsel effectively cross-examined Officer Smith. Defense counsel's questioning of witnesses is a matter of trial strategy, which we "will not second-guess with the benefit of hindsight." *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004). Defense counsel has "broad discretion in the handling of cases, which often results in taking the calculated risks which still do sometimes, at least, pluck legal victory out of legal defeat." *People v Pickens*, 446 Mich 298, 325; 521 NW2d 797 (1994) (quotation marks and citation omitted). An attorney's "strategy does not constitute ineffective assistance of counsel simply because it does not work." *People v Matuszak*, 263 Mich App 42, 61; 687 NW2d 342 (2004).

Similarly, in considering defendant's argument that defense counsel was ineffective for not calling a witness whom defendant requested, we will not second-guess defense counsel's decisions to call witnesses "with the benefit of hindsight." *Dixon*, 263 Mich App at 398. The record includes no mention of defendant's request for the witness. Defense counsel called two witnesses and ably questioned them concerning several matters that supported the theories of defense. Consequently, defense counsel's performance did not fall below an objective standard of reasonableness, so there was no violation of defendant's right to the effective assistance of counsel. As a result, defendant is not entitled to a new trial.

Affirmed.

/s/ Christopher P. Yates
/s/ Mark J. Cavanagh
/s/ Philip P. Mariani