*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JAHM SAIF ALGAHMI,

        Defendant-Appellant.

UNPUBLISHED
April 07, 2025
10:28 AM

No. 366848
Wayne Circuit Court
LC No. 20-002098-01-FH

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JAHM SAIF ALGAHMI,

        Defendant-Appellant.

No. 366855
Wayne Circuit Court
LC No. 21-002709-01-FC

Before: GARRETT, P.J., and K. F. KELLY and SWARTZLE, JJ.

PER CURIAM.

In this consolidated appeal,[1] in Docket No. 366848, defendant appeals by right his jury-trial convictions of assault with intent to do great bodily harm ("AIGBH"), MCL 750.84, and domestic violence, MCL 750.812. The trial court sentenced defendant, as a third habitual offender, MCL 769.11, to serve concurrent prison terms of 2 years and 10 months to 20 years for the assault conviction, and 93 days for the domestic violence conviction. In Docket No. 366855, defendant appeals by right his jury-trial convictions of two counts of first-degree criminal sexual conduct ("CSC-I"), MCL 750.520b, AIGBH, and aggravated stalking, MCL 750.411i, along with his

---

[1] *People v Algahmi*, unpublished order of the Court of Appeals, entered July 18, 2023 (Docket No. 366848 & 366855).

-1-

sentences for the CSC-I convictions. The trial court sentenced defendant to consecutive prison terms of 30 to 60 years for the two CSC-I convictions, to be served concurrently with terms of 6 years and 4 months to 10 years for the assault conviction, and 3 years and 2 months to 5 years for the stalking conviction, along with the sentences for his convictions underlying Docket No. 366848. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

The incident underlying Docket No. 366848 occurred on February 28, 2020. According to the trial testimony, defendant left his wife, the victim, sleeping in their basement room while he briefly left the premises. As was his custom, he hid the victim's phone in the basement in order to record any noises that occurred in his absence. When defendant returned, he listened to the recording, and confronted the victim about certain noises, insisting that the complainant had been unfaithful, then abused her by striking her face with his hand, intermittently choking her, hitting her several times with a metal pipe, and telling her to pray because she was going to die. Although the pair temporarily separated, the victim testified that defendant continued to interact with her electronically, and that she moved into an apartment he had rented about a month later.

The incident underlying Docket No. 366855 occurred on March 1, 2021, when the victim was pregnant and past her due date. That day, the victim returned to her apartment with defendant at approximately 7:00 p.m., at which time defendant pushed the victim down and pulled a wet towel tightly over her face, suffocating her. The victim asserted that she attempted to run out of the house, but the door was chained and defendant caught her. According to the victim, defendant berated her for her alleged unfaithfulness and then sexually assaulted her. Defendant then forced her into the shower with him to wash, after which they returned to the bed where defendant sexually assaulted her again. Defendant was subsequently arrested, charged, and convicted as noted. This appeal followed.

## II. SENTENCING

Defendant first argues that he is entitled to be resentenced because the consecutive sentences for the CSC-I convictions are, in effect, a life sentence. Defendant contends, therefore, that the sentence is disproportionate and should be reversed. We disagree.

### A. STANDARDS OF REVIEW

Whether a sentence violated the principles of reasonableness under the proportionality test is reviewed for an abuse of discretion. *People v Walden*, 319 Mich App 344, 351; 901 NW2d 142 (2017). An abuse of sentencing discretion occurs where the sentence imposed does not reasonably reflect the seriousness of the circumstances surrounding the offense and the offender. *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017).

### B. ANALYSIS

At sentencing, the parties agreed that defendant's sentencing guidelines recommendation for his minimum sentence for his convictions of CSC-I was 270 to 460 months. The trial court imposed consecutive sentence of 30 years to 60 years for each CSC-I conviction. The minimum sentences were thus within the guidelines ranges and, therefore, raised a rebuttable presumption

that the sentences were proportionate. See *People v Posey*, 512 Mich 317, 359; 1 NW3d 101 (2023). It is a defendant's burden to demonstrate that a "within-guidelines sentence is unreasonable or disproportionate." *Id*. In *People v Snow*, 386 Mich 586, 592; 194 NW2d 314 (1972), the Michigan Supreme Court, citing *Williams v New York*, 337 US 241; 69 S Ct 1079; 93 L Ed 1337 (1949), stated that the "basic considerations" to "determin[e] an appropriate sentence" are "(a) the reformation of the offender, (b) protection of society, (c) the disciplining of the wrongdoer, and (d) the deterrence of others from committing like offenses."

At issue is the court's decision to order defendant to serve those sentences consecutively. "In Michigan, concurrent sentencing is the norm, and a consecutive sentence may be imposed only if specifically authorized by statute." *People v Ryan*, 295 Mich App 388, 401; 819 NW2d 55 (2012) (quotation marks and citation omitted). MCL 750.520b(3) states that a sentencing court has the discretion to "order a term of imprisonment imposed under this section [as punishment for CSC-I] to be served consecutively to any term of imprisonment imposed for any other criminal offense arising from the same transaction." The trial court was entitled, therefore, to exercise its discretion and order that defendant serve consecutive sentences for his two CSC-I sentences, provided that the offenses arose from the same transaction. See *Ryan*, 295 Mich App at 408.

Defendant argues that his sentence was unnecessary to protect society, because even concurrent 30-year minimum sentences would keep defendant out of the public until he was over 70 years old and therefore beyond an age where he would present a danger to society, and that the consecutive sentences left him no chance to rehabilitate. However, the trial court's decision to impose consecutive sentencing served the purpose of protecting the public because it ensures that it will be very unlikely that defendant will have another choice to harm another victim. Additionally, the consecutive sentences will appropriately discipline defendant and provide general deterrence from committing sexual assaults. See *Snow*, 386 Mich at 592.

Defendant argues generally that sentencing does not deter others from committing similar offenses. The trial court properly treated general deterrence as a consideration in issuing consecutive sentences, because doubling the length of incarceration should, rationally, deter others from committing similar offenses. Defendant's consecutive sentences also serve the legitimate purposes of ensuring the protection of society from any further vicious crimes specifically by defendant, appropriately punishing defendant for his exploitative, violent, and unconscionable conduct, and generally deterring others from engaging in similar criminal behavior.

Defendant also argues that, as stated in *People v Baskerville*, 333 Mich App 276, 291; 963 NW2d 620 (2020), "given his age at the time of sentencing, his 60-year minimum sentence is already a 'death sentence' and that consecutive sentences are, therefore, 'overkill' and disproportionate under the circumstances of this case." But this Court explained in *Baskerville* that when a trial court imposes consecutive sentences, our review concerns whether each individual sentence is proportionate, not the aggregate length of the combined sentences. *Id*. Accordingly, when "the individual sentences do not exceed the maximum punishment allowed for each sentence, which is life imprisonment, . . . the aggregate of the sentences is not disproportionate." *Id*., citing *Ryan*, 295 Mich App at 401 n 8. Likewise, in this case, the maximum penalty for defendant's CSC-I convictions was life imprisonment, MCL 750.521b(2)(a). Because the individual 30-year sentences do not exceed the maximum punishment allowed for each sentence, the aggregate of the sentences is not disproportionate.

Moreover, the reasonableness of a sentence is determined by evaluating whether "that sentence violated the principle of proportionality, which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Steanhouse*, 500 Mich at 474 (quotation marks, citation, and brackets omitted). Factors bearing on the proportionality of a sentence include:

> (1) the seriousness of the offense, (2) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation, and (3) factors that were inadequately considered by the guidelines in a particular case. [*People v Steanhouse*, 313 Mich App 1, 46; 880 NW2d 297 (2015) (citations omitted).]

A trial court should also take into account "the nature of the offense and the background of the offender." *Steanhouse*, 313 Mich App at 45 (quotation marks and citation omitted).

Defendant does not argue that the court erred by basing its sentences on the horrific circumstances of defendant's CSC-I crimes, but does argue that the court should have considered that defendant had not previously been convicted of a violent crime. However, the trial court had just presided over defendant's trial for consolidated cases, which included defendant's violent behavior against the same complainant that occurred roughly one year before the conduct that resulted in his CSC-I convictions. Defendant has failed to rebut the presumption that his within-guidelines sentences were proportionate. The sentences were reasonable in light of the *Steanhouse* factors, including the seriousness of the offense, the relationship between the complainant and defendant, defendant's poor potential for rehabilitation, and factors inadequately considered in the guidelines.

As the trial court noted, defendant's conduct was shocking. He sexually assaulted his wife after suffocating her, while she was pregnant past her due date, and then violated her again that way after a shower, as part of "a sadistic plot" to increasingly inflict "more suffering" and "more pain." The court reasonably opined that defendant's purpose was to "dehumanize" and "humiliate" his wife until she lost her "will to live." The conduct the trial court described put into poor light any expression of remorse or other prospects for defendant's rehabilitation, because, as the court emphasized, there were periods after the strangulation and before the first assault, and after the first assault but before the second, that should have ended the incident. But, as the trial court noted, defendant escalated "to continue to control [the victim] every second of every day," and "no amount of control was apparently enough for [defendant]." The court also discussed factors not considered in the guidelines, such as that the intensity of defendant's assaults suggested an insatiable attacker, and that the victim was defendant's wife who was overdue to give birth to his child, which his violence also endangered.

The record therefore shows that the trial court established by reference to matters of record that its sentences were "proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Steanhouse*, 500 Mich at 474 (quotation marks and citation omitted). Defendant has not established that his challenged sentences were unreasonable or disproportionate

to the circumstances of the offense and offender, and the trial court did not abuse its discretion when it sentenced defendant to consecutive sentences for the CSC-I convictions.

## III. PRIOR INCARCERATION

Next, defendant argues that he was denied a fair trial because the victim informed the jurors during trial that defendant had previously been incarcerated, which compromised their ability to judge him impartially. We disagree.

## A. STANDARDS OF REVIEW

Whether evidence was properly admitted is reviewed for an abuse of discretion. *People v McGhee*, 268 Mich App 600, 636; 709 NW2d 595 (2005). The trial court does not abuse its discretion when it chooses an outcome within the range of reasonable and principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). An evidentiary error does not merit reversal in a criminal case unless, after review, it appears that it is "more probable than not that the error was outcome determinative." *People v Lukity*, 460 Mich 484, 496; 596 NW2d 607 (1999).

## B. ANALYSIS

The Sixth Amendment of the United States Constitution guarantees an accused criminal a fair trial by a panel of impartial jurors. *People v DeLeon*, 317 Mich App 714, 722; 895 NW2d 577 (2016); see also Const 1963, art 1, § 14. Jurors are "presumed to be impartial," and the "burden is on the defendant to establish that the juror was not impartial or at least that the juror's impartiality is in reasonable doubt." *People v Miller*, 482 Mich 540, 550; 759 NW2d 850 (2008) (quotation marks and citation omitted). A conviction may not be reversed unless the totality of circumstances indicates that "the defendant's trial was not fundamentally fair and held before a panel of impartial, indifferent jurors." *People v Cline*, 276 Mich App 634, 638; 741 NW2d 563 (2007) (quotation marks and citations omitted).

On redirect examination, the prosecutor asked the victim why she was reluctant to inform authorities of defendant's attack, to which she responded: "I didn't want to hurt him." After a series of questions from the prosecutor asking the victim to clarify her statement, the victim eventually responded: "Because that—at the time I—he already went to prison before and that did not help him cause once he got out he just went back to the pills and the drugs." Defense counsel objected, and after a bench conference, withdrew the objection and the prosecuting attorney proceeded to questioning on another topic.

Defendant argues that he was denied a fair and impartial jury because of the victim's statement about defendant's criminal history. In support, defendant cites *People v Bauder*, 269 Mich App 174, 194; 712 NW2d 506 (2005), and *People v Gonzales*, 193 Mich App 263, 264; 483 NW2d 458 (1992), cases in which the defendants moved for a mistrial after emotional outbursts by a witness or trial attendee. But this challenge does not involve juror misconduct, or issues with voir dire that might have compromised the jury's impartiality, but rather is an evidentiary issue concerning whether the victim's challenged testimony unfairly influenced the jury. Defendant did not move for a mistrial after the complainant's statement but now argues that the "statement was

irrelevant, improper, and problematic," and that the "unfairly prejudicial statements/outbursts entitle [defendant] to a new trial."

Defendant's main assertion is that the complaining witness's statement that "[defendant] already went to prison before" informed the jurors that defendant had a criminal history, thereby encouraging them to find him guilty by inferring that he was guilty because he had criminal character. "Evidence of a defendant's past criminal record is inadmissible until such time as the defendant takes the witness stand and raises the issue of his character or credibility." *People v Stinson*, 113 Mich App 719, 726-727; 318 NW2d 513 (1982), citing MRE 404.

In this case, the prosecutor did not attempt to admit evidence that defendant had committed other bad acts resulting in incarceration. "[A]s a general rule, unresponsive testimony by a prosecution witness does not justify a mistrial unless the prosecutor knew in advance that the witness would give the unresponsive testimony or the prosecutor conspired with or encouraged the witness to give that testimony." *People v Jackson*, 313 Mich App 409, 427; 884 NW2d 297 (2015) (quotation marks and citation omitted). In this case, the prosecutor asked the victim why she was reluctant to report the assaults and to clarify a statement she had offered on cross-examination about what another attorney had told her about possible sentences. Seeking an explanation of the victim's behavior after the crimes was itself a proper question and, generally, "an unresponsive, volunteered answer to a proper question is not grounds for the granting of a mistrial." *People v Haywood*, 209 Mich App 217, 228; 530 NW2d 497 (1995).

Additionally, given that certain information had already come to the jury's attention, there was not a reasonable likelihood that the victim's statement unfairly prejudiced him. Defense counsel had effectively informed the jury, while cross-examining the victim, that defendant had already been to prison. Attempting to pinpoint the date on which the victim moved back in with defendant, defense counsel asked: "[Defendant] was released from jail at some point in time in March of 2021. Do you remember that?" Defense counsel also asked the victim to confirm her statement to an interviewing officer that she did not want defendant to face prosecution because another prosecutor told her that "they were going to give [defendant] 120 years," and that "he got 60 years." The trial court sustained the prosecutor's objection that the line of questioning was irrelevant, and defense counsel continued his cross-examination by asking whether the complainant was crying and reluctant to speak to the police because defendant was not guilty. Defense counsel, therefore, introduced the issue when he referenced defendant's incarceration that followed his arrest in 2020 for purposes of having the victim provide the timeline of events. That the victim subsequently stated that defendant had previously been incarcerated would not have changed the jury's perception of defendant because it was consistent with what defense counsel asked the victim previously. See *People v Witherspoon*, 257 Mich App 329, 333; 670 NW2d 434 (2003) ("An appellant may not benefit from an alleged error that the appellant contributed to by plan or negligence."). Thus, any error that occurred with the victim's testimony did not result in unfair prejudice.

## IV. INEFFECTIVE ASSISTANCE

Lastly, defendant argues that his trial attorney was constitutionally ineffective because he should have objected to the victim's statement about his earlier incarceration and moved for a mistrial. We disagree.

## A. STANDARDS OF REVIEW

"We review de novo the constitutional question whether an attorney's ineffective assistance deprived a defendant of his or her Sixth Amendment right to counsel." *People v Hughes*, 339 Mich App 99, 105; 981 NW2d 182 (2021) (quotation marks and citation omitted). "Where the trial court has not conducted an evidentiary hearing, this Court's review is limited to mistakes apparent on the record." *Id.* (quotation marks and citation omitted).

## B. ANALYSIS

A criminal defendant's right to counsel is guaranteed by the United States and Michigan Constitutions. US Const, Am VI; Const 1963, art 1, § 20. This "right to counsel encompasses the right to the effective assistance of counsel." *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007). The "effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Rodgers*, 248 Mich App 702, 714; 645 NW2d 294 (2001). In order to prevail on a claim of ineffective assistance, a defendant must show that "counsel's performance was deficient" and that "counsel's deficient performance prejudiced the defense." *People v Taylor*, 275 Mich App 177, 186; 737 NW2d 790 (2007) (quotation marks and citation omitted).

Defendant argues that defense counsel should have objected to the victim's statement about his earlier incarceration and moved for a mistrial. However, defendant's counsel did object, a sidebar was held, and the redirect examination of the victim continued with no further questioning implicating defendant's earlier incarceration. Moreover, because defense counsel had already informed the jury that defendant had been incarcerated, it is not apparent on what grounds it would have been appropriate to request a mistrial. Therefore, the performance of defendant's trial counsel was not deficient. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel.").

Affirmed.

/s/ Kristina Robinson Garrett
/s/ Kirsten Frank Kelly
/s/ Brock A. Swartzle